UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ST. CHARLES PARISH, LOUISIANA AND MATTHEW JEWELL, IN HIS OFFICIAL CAPACITY AS PARISH PRESIDENT**<br>     *Plaintiffs*,<br><br>v.<br><br>**FEDERAL EMERGENCY MANAGEMENT AGENCY**<br>     *Defendant*. | **CIVIL ACTION: 23-cv-1369**<br><br><br>**JUDGE DARREL JAMES PAPILLION**<br><br><br>**MAGISTRATE JUDGE MICHAEL B. NORTH** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO FEMA'S MOTION FOR PROTECTIVE ORDER**

This lawsuit arises out of the FEMA's refusal to provide any responsive documents to Plaintiffs St. Charles Parish and President Matthew Jewell's (together, the "Parish") Freedom of Information Act (FOIA) request in compliance with the time periods prescribed under the law. The Parish issued discovery responses to FEMA specifically requesting non-confidential and limited information related to the scope of FEMA's FOIA search, which the law entitles the Parish to discover. FEMA, by refusing to engage even in limited discovery, continues to evade disclosure of any documents despite its obligation to grant such access to the public. Its motion for protective order is more of the same. Accordingly, the Parish opposes FEMA's motion.

    **I.**      **Background**

On November 3, 2022, the Parish submitted the following FOIA request to FEMA: "Please provide all data including but not limited to modeling data used to calculate NFIP [National Flood Insurance Program] flood insurance premiums in St. Charles Parish, Louisiana, in Risk Rating 2.0."[1] The Parish relies on the NFIP to provide flood insurance to its residents. In an effort to update the NFIP's risk-rating methodology as mandated by Congress, FEMA implemented a new pricing methodology dubbed Risk Rating 2.0. FEMA asserted that its new premium methodology would provide more equitable rates that better reflect flood risk. When FEMA released these new "equitable" insurance rates under Risk Rating 2.0, it was revealed that Louisiana residents, and especially residents of St. Charles Parish, would see sharp increases in flood insurance premiums. In many cases, Parish residents could expect to see their flood insurance premiums triple, which

---

[1] Exhibit 1, p. 3.

could price many residents out of their homes. Simply put, for Louisianans, NFIP is no longer affordable.

To better understand Risk Rating 2.0, and learn how to respond to the rising flood insurance cost crisis for its citizens, the Parish sought information and public records related to the new premium calculations used by FEMA in the NFIP. Under FOIA, FEMA had 20 days, excluding Saturdays, Sundays, and legal public holidays, after receipt of the request to determine whether to comply. 5 U.S.C. § 522(a)(6)(A)(i). The Parish submitted its request on November 3, 2022.  On November 23, 2022, FEMA sought clarity in connection with the request to "help the search tasker in finding records."[2]  That same day, the Parish responded and provided the requested clarity. Specifically, the Parish explained, "The NFIP uses risk modeling to determine how much premium to charge participants who participate in the flood insurance program. I am requesting the risk model used to assign premiums to St. Charles Parish residents."[3]  On January 27, 2023, two months later and far beyond the period for compliance under FOIA, FEMA issued its Final Response informing the Parish that it would not release the requested records because the information was confidential and trade secrets pursuant to Exemption (b)(4) under 5 U.S.C. § 552.[4]  To date, FEMA has released not one single document to the Parish and, despite its blanketed claim to Exemption (b)(4), FEMA has failed to indicate whether it actually located any responsive documents whatsoever.  FEMA's lack of transparency and stonewalling is a quintessential case of bad faith.

As prescribed by FOIA, the Parish submitted a timely administrative appeal of FEMA's Final Response on February 27, 2023.[5]  FEMA again had 20 days, exclusive of Saturdays, Sundays and legal holidays, to respond.  A few weeks later, on March 16, 2023, FEMA again requested clarity with regard to the request, asking for examples of the data that the Parish was requesting.[6]  Keep in mind, FEMA requested the Parish to provide "examples" of information and documentation that it was withholding from the public's view.  The Parish responded on March 23, 2023, noting that its request for clarity was almost identical to its prior correspondence and also noting that the Parish could not identify for FEMA what data FEMA possessed, hence the reason for the request.[7]  On April 14, 2023, beyond the time allowed for issuing a decision on the appeal, a representative of FEMA informed the Parish that it was awaiting transfer of the records

---

[2] Exhibit 1, pp. 2-3.
[3] Exhibit 1, p. 2.
[4] Exhibit 2.
[5] Exhibit 3.
[6] Exhibit 4.
[7] Exhibit 5.

and anticipated receiving the records soon.[8]  Yet, no documents were provided and FEMA again neglected to act with transparency.  Indeed, the Parish has not received any decision or Final Response to its administrative appeal – a violation of FOIA on its own accord.  Accordingly, having constructively exhausted its administrative remedies, the Parish initiated this lawsuit on April 25, 2023.

As for the limited written discovery before the Court, on August 11, 2023, the Parish served written discovery requests to FEMA related to the scope of FEMA's search and it application of Exemption (b)(4).  The Parish did not ask for production of the documents or information that were the subject of or would be responsive to its FOIA request.  The Parish understands that inquiry is appropriately reserved for the summary judgment procedure.  However, because the law allows for limited discovery, which FEMA recognizes in its motion, the Parish issued its discovery requests.  FEMA objected and requested that the Parish retract its requests.  The Parish has maintained its position, and in response, FEMA filed the present motion for protective order.  The motion should be denied because the Parish is entitled to the limited discovery sought.

## II.    Law and Analysis

"The FOIA was enacted to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)). "Consistently with this purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173, 112 S. Ct. 541, 547, 116 L. Ed. 2d 526 (1991). "FOIA requires federal agencies to disclose documents within their control upon request unless the documents fall within one of nine enumerated exceptions." *Berk v. Exec. Off. of United States Att'ys*, No. 21-10693, 2022 WL 17337821, *1 (5th Cir. Nov. 30, 2022) (citing 5 U.S.C. § 552(b)(1)-(9)). The exemptions to disclosure are explicitly limited by statute and should be construed narrowly. *Rose*, 425 U.S. at 361.  Agencies are permitted 20 days (excluding Saturdays, Sundays, and legal public holidays) to respond to FOIA requests. 5 U.S.C. § 522(a)(6)(A)(i). They are permitted the same amount of time to respond to an administrative appeal. 5 U.S.C. § 522(a)(6)(A)(ii).  If the agency fails to make a timely determination, the requester constructively exhausts his administrative remedies and may seek judicial review. 5 U.S.C. § 552(a)(6)(C).

---

[8] Exhibit 6.

Generally, the Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any nonprivileged matter that is relative to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. p. 26.  While discovery is more limited in FOIA cases, discovery may be granted when the plaintiff has raised a sufficient question as to the agency's good faith. *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, No. CIV. 05-2078(EGS), 2006 WL 1518964, *3 (D.D.C. June 1, 2006).  "Typically, discovery in FOIA matters is 'limited to the scope of the agency's search and its indexing and classification procedures.'" *Cole v. Fed. Emergency Mgmt. Agency*, 340 F.R.D. 485, 487 (D.D.C. 2022) (*Heily v. U.S. Dep't of Com.*, 69 F. App'x 171, 174 (4th Cir. 2003)).  "So, '[w]hether a thorough search for documents has taken place and whether withheld items are exempt from disclosure are permissible avenues for discovery.'" *Id*. (quoting *Niren v. Immigration & Naturalization Serv.*, 103 F.R.D. 10, 11 (D. Or. 1984).  "Other appropriate lines of inquiry include how agency employees 'conducted a search, which files were reviewed, what search terms were used, how the documents were produced to [the agency's FOIA specialist], whether any documents were withheld from production, who made the decisions about withholding, and other relevant questions.'" *Id*. (quoting *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1246 (11th Cir. 2008)).

The Parish issued 16 interrogatories and 4 requests for production of documents to FEMA. Each of the requests were intentionally limited to the scope of FEMA's search, its processes for responding to the Parish's FOIA request, the persons who conducted the search, and its process or procedures for determining that the responsive documents are subject to Exemption (b)(4).[9] Despite its claims for transparency, FEMA's position in this lawsuit is that the public is entitled to no discovery whatsoever.  It alternatively argues that the Parish's request are premature and any permitted discovery should be delayed until FEMA has filed its motion for summary judgment with a *Vaughn* index and affidavits.  Incredibly, FEMA further asserts that the Parish has yet to refute its good faith and thus it is not entitled to discovery.  This coming after nearly 300 days of FEMA failing to provide the public one single public document in response to the FOIA request. The cases FEMA relies on, however, are not relevant to the Parish's discovery requests. For example, in *Driggers v. U.S.*, No. 3:11-CV-0229-N, 2011 WL 2883283 (N.D. Tex. July 18, 2011), the court denied the plaintiff's discovery requests because the plaintiff sought "detailed

---

[9] *See* R. Doc. 12-3.

information from the withheld records as well as Defendants' opinions and conclusions related to that information." *Id*. at *2.  That is plainly not what the Parish has requested here.

To be clear, limited discovery is permitted under FOIA, and this is the exact type of case that it should be allowed.  In *Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice*, the D.C. district court determined that discovery was warranted because the plaintiff, CREW, presented facts that raised a sufficient question as to whether the government processed its FOIA requests in a reasonable and expeditious manner and thereby complied with its FOIA obligations. 2006 WL 1518964, *2.  The court cited the government's delay in processing and adjudicating the request, which went beyond the median time period within which the agency typically processed requests, and its failure to provide the plaintiff with an interim response or progress regarding the request, as evidence of bad faith. *Id*. at *3-4. The court granted the plaintiff's motion for discovery, allowing written discovery and depositions, before the government filed a motion for summary judgment.

Here, the Parish's entire lawsuit arises from FEMA's lack of good faith in responding to the request. In its initial Final Response to the Parish's FOIA request, that was issued beyond the time period allowed under FOIA, FEMA did not provide any documents but provided a blanket and generic statement that all responsive documents were confidential under Exemption (b)(4).  It did not indicate whether a search had even been conducted or documents had been reviewed and determined to be confidential.  FEMA instead issued a categorical and generalized denial of the request without providing any information whatsoever related to the search.  Now, FEMA tells a different tale by admitting in its motion that it has "not yet completed its processing of records."[10] Clearly, then, a sufficient search was not conducted and FEMA did not make a good faith effort to respond to the Parish's initial FOIA request.

Through its FOIA request, the Parish simply is requesting the documents supporting the data FEMA used to calculate NFIP flood insurance premiums for St. Charles Parish.  This data will help drive policy decisions for flood protection, zoning, public safety and health and other critical functions of the Parish.  It is simply unbelievable that FEMA does not possess any non-confidential information responsive to the Parish's request. In fact, a simple Google search reveals that FEMA touts some of the data information in public disclosures already.  For example, FEMA's own publications reveal that it considers property characteristics, flood types, frequency

---

[10] R. Doc. 12-1, at 7.

of flooding, foundation types, and distance to flooding sources, as well as mitigation efforts and community programs.[11]  This data as it relates to locations in St. Charles Parish is responsive to the Parish's request.  These data points facially do not concern trade secrets or proprietary information of any third party that could be protected under Exemption (b)(4). FEMA's rejection of the Parish's request and refusal to provide any responsive information was not in good faith but a dereliction of its duties under FOIA.

The Parish therefore appealed FEMA's Final Response explaining the reason the response was wholly inadequate. Thereafter, it corresponded with a representative of FEMA who indicated that responsive documents were being gathered and delivered to the appropriate location for, presumably, review and disclosure.  That was the last correspondence the Parish had with FEMA. FEMA did not respond to the Parish's appeal.  Unlike the government in *Citizens*, FEMA has not argued here that the request was atypical or overly complicated.  FEMA has simply failed to respond to the appeal. While it alludes to the fact that a search is ongoing, it has not indicated that it has discovered responsive documents or intends to disclose any information.  At this point, the Parish's request is almost 10 months old, and FEMA's motion for protective order is more of the same—efforts to delay and avoid disclosure.

The Court has discretion to allow discovery. A factual question as to FEMA's good faith in conducting a search and responding to the Parish's FOIA request undoubtedly exists, and the Parish is entitled to answers to the limited written discovery propounded on FEMA.[12]

Respectfully submitted,

**ADAMS AND REESE LLP**

*/s/ Erica P. Sensenbrenner*
CHRISTOPHER J. KANE (#29282)
ERICA P. SENSENBRENNER (#38400)
701 Poydras Street, Suite 4500
New Orleans, LA 70l39
Telephone: (504) 58l-3234
Facsimile:  (504) 566-0210
Christopher.Kane@arlaw.com
Erica.Sensenbrenner@arlaw.com

**AND**

---

[11] Exhibit 7.
[12] The Parish underscores the fact that it has only propounded written discovery, whereas courts have allowed more extensive discovery, such as depositions, in similar instances.  *See Citizens*, 2006 WL 1518964, *1; *see also Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365 (D.C. Cir. 1980); *Jud. Watch v. U.S. Dep't of State*, No. CV 13-1363, 2016 WL 11530536 (D.D.C. May 4, 2016).

COREY M. OUBRE (#28709)
Director of Legal Services
St. Charles Parish
723 Paul Maillard Road
Luling, LA 70070
Telephone: (985) 783-5013
Facsimile:  (985) 307-0861
cmoubre@stcharlesgov.net

**AND**

ROBERT L. RAYMOND (#11408)
Assistant Director of Legal Services
St. Charles Parish
14108 River Road
Destrahan, LA 70047
Telephone: (985) 783-5013
Facsimile:  (985) 307-0861
rraymond@stcharlesgov.net

*Attorneys for Plaintiffs*