# ADAMS AND REESE LLP

Attorneys at Law
Alabama
Colorado
Florida
Georgia
**Louisiana**
Mississippi
North Carolina
South Carolina
Tennessee
Texas
Washington, DC

**Christopher J. Kane**
Partner
Direct: 504.585.0155
E-Fax: 504.585.0938
christopher.kane@arlaw.com

February 27, 2023

*Via E-mail to fema-foia@fema.dhs.gov*
Federal Emergency Management Agency
Office of the Chief Administrative Officer
Information Management Division (FOIA Appeals)
500 C Street, SW, Seventh Floor, Mail Stop 3172
Washington D.C. 20472-3172

Re:   **Appeal of Final Response to FOIA Request Number 2023-FEFO-00111**

To Whom It May Concern,

Our firm represents St. Charles Parish, Louisiana and Parish President Matthew Jewell. On November 3, 2022, President Jewell submitted the following Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), Federal Emergency Management Agency (FEMA):

> Please provide all data including but not limited to modeling data used to calculate NFIP flood insurance premiums in St. Charles Parish, Louisiana, in Risk Rating 2.0.

On November 23, 2022, President Jewell received a response asking for clarity about the specific data he was seeking because it would "help the search tasker in finding records." That same day, he responded stating, "The NFIP uses risk modeling to determine how much premium to charge participants who participate in the flood insurance program. I am requesting the risk model used to assign premiums to St. Charles Parish residents. I believe Milliman was the company that did the modeling for FEMA." President Jewell did not receive any further requests for clarity or information.

After sending multiple follow-up communications inquiring about the status of the request, President Jewell received a Final Response from FEMA on January 27, 2023. The Final Response indicates that a search was conducted but no records would be released in response pursuant to Exemption (b)(4) under 5 U.S.C. § 552. FEMA reasons that the information requested is considered a "trade secret" and thus exempted.

The Final Response is nonresponsive, vague, and seems to rely on an outdated legal standard. Therefore, we submit this timely appeal.

"The FOIA was enacted to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)). "Consistently with this purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173, 112 S. Ct. 541, 547, 116 L. Ed. 2d 526 (1991).

"FOIA requires federal agencies to disclose documents within their control upon request unless the documents fall within one of nine enumerated exceptions." *Berk v. Exec. Off. of United States Att'ys*, No. 21-10693, 2022 WL 17337821, *1 (5th Cir. Nov. 30, 2022) (citing 5 U.S.C. § 552(b)(1)-(9)). The exemptions to disclosure are explicitly limited by statute and should be construed narrowly. *Rose*, 425 U.S. at 361.

Accordingly, the law favors disclosure of public documents, and FEMA has the burden to show that documents were properly withheld under one of the enumerated exceptions. It has failed to do so.

**First**, because it is highly improbable that FEMA was unable to recover a single responsive and non-confidential document, it seems that the agency misunderstood the request, at least in part. The initial request sought **all data, including but not limited to modeling data,** that was used to calculate the NFIP. FEMA contends such information is confidential or trade secrets because

> [t]he Risk Rating Engine was designed using privately held data that the US government purchased through contracting. Forcing the government through FOIA to reveal the proprietary data of the third party would breach exemption 4 of [FOIA] which protects trade secrets and commercial financial information. The modeling information is very valuable and the company that produced it would be at a significant loss if it were to be made public.

The FOIA request, though, did not seek third party proprietary data or any type of algorithm that FEMA used to calculate the NFIP premiums in Risk Rating 2.0. Rather, the request seeks the data that is crucial to the residents of St. Charles Parish and will assist in understanding the risk rating in order to intelligently protect and advance the interest of its citizens. The information sought has a significant compelling public interest because it will inform and drive how the Parish invests public taxpayer dollars, such as in certain flood protection projects or other life-safety investments. As it currently stands, NFIP flood insurance rates are also a costly burden for many current and prospective homeowners. In addition to basic public safety concerns, the current rate structure places a huge impact on the region's residential real estate market. In addition, the rates impact small business owners by driving up costs that will be passed on to consumers, thereby making it difficult to remain competitive. Despite this, FEMA did not even state in its Final Response

whether it does or does not possess the requested information, although it is inconceivable that the agency does not have a single responsive non-confidential document.

**Second**, it is entirely unclear from the Final Response what documents were reviewed, if any, and how the agency determined the responsive documents, if any, constitute trade secrets. That is to say, the Final Response is so vague that it is impossible to understand FEMA's position regarding the confidentiality of the responsive documents or whether responsive documents do, in fact, constitute trade secrets. Accordingly, it cannot be ascertained from the Final Response that the agency conducted an adequate search or that it used methods that could be reasonably expected to produce the information requested. *See Batton*, 598 F.3d at 176.

**Finally**, in asserting that the documents are confidential, the agency relied on an outdated interpretation of what constitutes "confidential" under Exemption (b)(4). In support of its reliance on Exemption (b)(4), FEMA reasoned:

> The courts have held that this subsection protects (a) confidential commercial information, the disclosure of which is likely to cause substantial harm to the competitive position of the person who submitted the information and (b) information that was voluntarily submitted to the government if it is the kind of information that the provider would not customarily make available to the public.

Section (b)(4) provides an exemption under FOIA for "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The Supreme Court recently established a test for the application of this exemption to answer the question: "when does information provided to a federal agency qualify as 'confidential'?" *Food Mktg. Inst. v. Argus Leader Media*, 204 L. Ed. 2d 742, 139 S. Ct. 2356, 2360 (2019). In *Argus*, the Supreme Court reviewed the plain text of the statute, noting that "confidential commercial information" does not appear in the statute, and it specifically rejected the "substantial competitive harm" test, which FEMA relied on in its Final Response. *See id.* at 2365-66. Rather, the Court established a two-prong test, and determined information is "confidential" under Exemption 4 if it is (1) "both customarily and actually treated as private by its owner" and (2) "provided to the government under an assurance of privacy." *Ryan, L.L.C. v. United States Dep't of Interior*, No. 22-10373, 2022 WL 17250186, *2 (5th Cir. Nov. 28, 2022) (quoting *Argus*, 139 S. Ct. at 2356, 2363-66).

The Supreme Court explained in *Argus* that an "assurance" can exist by way of a federal regulation. *Argus*, 139 S. Ct. at 2363 (holding an "assurance" existed when, as evidenced by 43 Fed. Reg. 43275 (1978) and 7 C.F.R. § 278.1(l), the "government has long promised" the "retailers who participate in SNAP" that "it will keep their information private"). FEMA, however, does not cite any such regulation in the Final Response. In addition, FEMA did not state whether it made assurances to the third party that its information would be maintained as confidential. It is not clear from the Final Response, and it would be surprising, that FEMA and/or the third party "customarily and actually treat[s] as private" the data compiled to calculate the flood premiums in Risk Rating 2.0. *See Ryan, L.L.C. v. United States Dep't of Interior*, No. 22-10373, 2022 WL 17250186, *2

(5th Cir. Nov. 28, 2022) (quoting *Argus*, 139 S. Ct. at 2363). And as the Court explained in *Argus*, the potential for competitive harm is not a standard or consideration under the plain language of Exemption 4.

In summary, FEMA has not met its burden to show that all of the responsive information is confidential, and it has not met its burden to show that it performed a search using methods that could be reasonably expected to produce responsive documents. Rather, after almost two months, FEMA issued a Final Response that concluded, without support, that the requested documents are confidential under an outdated legal interpretation of Section 552(b)(4).

We look forward to your timely response.

Respectfully,

Christopher J. Kane
Erica P. Sensenbrenner

Enclosure
(FOIA Request Number 2023-FEFO-00111 Final Response)