UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ST. CHARLES PARISH, A POLITICAL SUBDIVISION OF THE STATE OF LOUISIANA, AND MATTHEW JEWELL, IN HIS OFFICIAL CAPACITY AS ST. CHARLES PARISH PRESIDENT,<br><br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY,<br><br>*Defendant*. | Civil Action No. 2:23-cv-01369<br><br>Section P<br><br>Judge Papillion<br><br>Magistrate Judge North |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR A PROTECTIVE ORDER PRECLUDING DISCOVERY**

Plaintiffs' Memorandum in Opposition to FEMA's Motion for a Protective Order (Dkt. 16) confirms that Plaintiffs' pre-summary judgment discovery request should be prohibited. As FEMA explained in its supporting Memorandum (Dkt. 12-1), Plaintiffs have not established any basis for unfairly burdening FEMA, which is engaged in processing records, with their interrogatories and requests for production on Freedom of Information Act ("FOIA") issues that are meant to be resolved in the first instance at summary judgment, on the basis of the agency's submissions. Plaintiffs' Opposition fails to show anything to the contrary. It indicates that Plaintiffs' discovery request is unwarranted because Plaintiffs ignore the wealth of authority precluding pre-summary-judgment discovery in FOIA cases and instead rely on a handful of inapt cases. And the Opposition fails to provide any substantiation of any bad faith on FEMA's part that would justify Plaintiffs' extraordinary discovery request. By contrast, FEMA's representations, including in its declaration accompanying this reply (Ex. A), demonstrate that the

agency is operating in good faith and is working diligently and expeditiously to process voluminous records in response to Plaintiffs' broad FOIA request. For these reasons, the Court should grant FEMA's Motion for A Protective Order Precluding Discovery.

**I.        Plaintiffs' Opposition Confirms That Their Discovery Request Is Unwarranted**

Plaintiffs fail to contend with the overwhelming case law across jurisdictions—discussed at length in FEMA's Memorandum, Dkt. 12-1 at 2–6—that establishes that discovery is generally unavailable in FOIA actions, and certainly is not available before the government has had an opportunity to complete its processing of records, produce non-exempt responsive records, and move for summary judgment if necessary. *See also, e.g.*, *Atchafalaya Basinkeeper, Inc. v. U.S. Army Corps Of Eng'rs*, No. 2:21-cv-317 (E.D. La. Aug. 3, 2021) (North, C. Mag. J.) (granting motion for protective order precluding discovery in FOIA case because the "overwhelming weight of authority supports limiting discovery until the pending motion for summary judgment and the sufficiency of the accompanying declaration are decided"), ECF No. 35.

Plaintiffs ignore this wealth of case law, except to briefly argue that just one of the cases FEMA relies on, *Driggers v. United States*, No. 3:11-CV-0229-N, 2011 WL 2883283 (N.D. Tex. July 18, 2011) (cited at Dkt. 12-1 at 3–4, and quoted at *id.* at 5), is "not relevant" because the plaintiff there sought "detailed information" in discovery, in contrast to their "intentionally limited" discovery request, Dkt. 16 at 4–5 (quotation marks omitted). But of course *Driggers* is relevant. Like this case, *Driggers* concerned an inappropriate attempt to obtain discovery in a FOIA case pre-summary judgment, which the court rejected because "courts routinely delay discovery until after the government has filed a motion for summary judgment and has had a chance to present the court with the information necessary to make a decision on the applicable exemptions." 2011 WL 2883283, at *1. As the Driggers' court explained: "Allowing Plaintiff to

conduct . . . discovery before Defendant[] file[s] a motion for summary judgment would essentially provide the relief [Plaintiff] seeks through [a FOIA] lawsuit. Only after [Defendant] file[s] a motion for summary [judgment] and supporting affidavits will the Court have the information necessary to appropriately limit the scope of discovery or forgo it entirely." *Id.* at *2 (quoted at Dkt. 12-1 at 5). Plaintiffs fail to engage with this directly on-point reasoning (or the similar reasoning in the other cases FEMA discusses and cites), which has nothing to do with the scope of the pre-summary judgment discovery requested.[1]

Instead, Plaintiffs simply forge ahead in attempting to obtain discovery on—and to prematurely litigate via protective order briefing—merits questions that established law dictates are summary judgment questions. Dkt. 16 at 3–4 (collecting cases).

Plaintiffs' own characterizations of their discovery request reinforce this conclusion. Throughout their Opposition, Plaintiffs insist that they are entitled to discovery so that they can determine (1) the "scope of FEMA's FOIA search," Dkt. 16 at 1; *see id.* at 3–4 (same); (2) FEMA's "process" for responding to Plaintiffs' request, *id.* at 4; (3) "[FEMA's] application of Exemption (b)(4)" and its "process or procedures for determining" to apply the exemption, *id.* at 3–4; and (4) whether FEMA has operated in "good faith in conducting a search and responding to [Plaintiffs'] FOIA request" and in its alleged "delay" in these efforts, *id.* at 6. But, as discussed, questions as

---

[1] Plaintiffs' contentions throughout their Opposition that the written discovery they seek is "limited," Dkt. 16 at 1, 2, 4–6, is not just besides the point (since they cannot seek to justify premature discovery simply because their interrogatories and requests for production are less expansive than the discovery requests in other cases where courts have denied FOIA discovery). It is also wrong, since Plaintiffs' discovery request requires FEMA to accelerate its processing of voluminous records (discussed in Part II below) and its production and withholding determinations in order to address what are summary judgment questions. The appropriate scope of Plaintiffs' discovery request would only come into play *after* the Court's summary judgment ruling, if the Court determines that the government's summary judgment submissions (described at Dkt. 12-1 at 3–4 and *infra* at p. 4) are not facially adequate, even once supplemented.

to the scope and adequacy of an agency's search, the appropriateness of its productions and its withholdings under FOIA exemptions, and its good faith are all questions to be resolved at summary judgment. Dkt. 12-1 at 3–4 (citing, *inter alia*, *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994), which explains that, at "summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA," and that if the agency meets its burden, the plaintiff can avoid summary judgment and obtain discovery only by making a showing of bad faith); *W. Ctr. For Journalism v. IRS*, 116 F. Supp. 2d 1, 7–13 (D.D.C. 2000) (resolving at summary judgment, in agency's favor, the adequacy of agency's search and propriety of its withholdings, and denying discovery because agency's submissions showed good faith and plaintiff identified no contrary evidence), *aff'd*, 22 F. App'x 14 (D.C. Cir. 2001); *Freedom Watch, Inc. v. Nat'l Sec. Agency*, 197 F. Supp. 3d 165, 171–77 (D.D.C. 2016) (similar); *Wheeler v. U.S. Dep't of Just.*, 462 F. Supp. 2d 48, 54 (D.D.C. 2006) (resolving at summary judgment that one-year delay in agency conducting FOIA search did not render search unreasonable).  At summary judgment, the government's submission includes a declaration and/or *Vaughn* index that describes any withheld information with enough detail to demonstrate that the information is properly exempt under a FOIA exemption, explains how disclosure of the particular information would damage the interest protected by the claimed exemption, and describes the agency's search and processing of records if those are at issue in the case.  This case is no exception.  Before summary judgment, no "factual question to FEMA's good faith in conducting a search and responding to [Plaintiffs'] FOIA request" can exist[]." Dkt. 16 at 6; *see, e.g.*, *Driggers,* 2011 WL 2883283, at *1 (same, as quoted at Dkt. 12-1 at 5).  Plaintiffs simply ignore this axiomatic principle.

       The limited case law that Plaintiffs invoke does not save their Opposition.  The opening

paragraph of their argument (Dkt. 16 at 3) simply relies on cases that recite basic FOIA principles that are routinely found in the legal standard sections of FOIA cases granting summary judgment—without discovery—to the government. *See, e.g.*, *Wheeler*, 462 F. Supp. 2d at 51. The following paragraph of the Opposition (Dkt. 16 at 4) cites *Cole v. FEMA*, 340 F.R.D. 485, 486 (D.D.C. 2022), which actually undercuts Plaintiffs' discovery request. The *Cole* court had previously denied plaintiff's pre-summary judgment request as "premature," and it allowed plaintiff's renewed discovery request only after it determined that the agency's representations in its summary judgment submissions as to the adequacy of its search "proved 'insufficient.'" *Id.* at 486 (also noting that, unlike this case, the suit involved a "decade-long dispute over a request for government records"); *see also id.* No. 1:15-cv-1991, ECF Nos. 23, 37 (government's motion for summary judgment and magistrate judge opinion recommending denial of the motion and grant of plaintiff's discovery motion). Here, as in *Cole*, Plaintiffs' pre-summary judgment discovery request is "premature." Plaintiffs also err in citing to *Heily v. U.S. Department of Commerce*, 69 F. App'x 171 (4th Cir. 2003), since (1) district court in the case had denied plaintiff's motion to compel discovery, imposed a discovery stay, and only lifted the stay due to the agency's apparent misrepresentations regarding its discovery intentions, *id.* No. 1:02-cv-415 (E.D. Va. 2002), ECF Nos. 30, 36; and (2) the discovery at issue "was limited to any factual disputes challenging the adequacy of the agency's search for documents and the adequacy of the [*Vaughn*] index prepared by the agency" in its summary judgment submissions to "describe[e] its reasons for withholding any documents," *Heily*, 69 F. App'x at 173–75. Here, FEMA has not engaged in any misrepresentations. And the whole premise of its Motion is that Plaintiffs do not yet have any basis to, via discovery, challenge the adequacy of FEMA's summary judgment submissions, since those submissions are forthcoming.

Beyond erroneously relying on cases like *Cole* and *Heily*, Plaintiffs pin their request for discovery on a single inapt case: *Citizens for Responsibility & Ethics in Washington v. U.S. Department of Justice*, No. CIV. 05-2078(EGS), 2006 WL 1518964 (D.D.C. June 1, 2006) ("*CREW*") (discussed at Dkt. 16 at 5). *CREW* is readily distinguishable because two critical factors caused the court there to take the exceedingly rare step of granting limited discovery prior to summary judgment—neither of which is present here. First, the *CREW* court allowed such discovery because the agency had taken "almost five months" to complete the statutorily mandated two hours of free search time and apprise plaintiff as to the results, and it had no explanation for this delay even when asked about it at oral argument. *Id.* at *2–4; *see also id.* at *2 (similarly discussing the agency's "seventh month[]" delay in "resolv[ing] [plaintiff]'s fee waiver request and appeal, despite its claim that it was processing the request on an expedited basis"). Here, there has been no allegation that FEMA has prolonged by half a year an obligation to conduct a mere two hours of searching or resolve a fee waiver request, let alone that FEMA has done so without any explanation. Second, the *CREW* court allowed limited discovery because the government had not "provided any evidence to show" that it was handling plaintiff's FOIA requests in a "diligent and expeditious" manner. *Id.* at *4–5. But here FEMA is diligently and expeditiously engaged in processing voluminous records in response to Plaintiffs' FOIA request, as discussed in Part II below and substantiated in the accompanying declaration (Ex. A). That rebuts any suggestion of bad faith, which at the present is simply Plaintiffs' speculation. *See, e.g.*, *Thompson v. United States*, No. 1:09CV1246(JCC), 2010 WL 231782, at *2–3 (E.D. Va. Jan. 19, 2010) (distinguishing *CREW* on this basis, noting that the Plaintiffs there had identified specific evidence of bad faith or malfeasance but that, per established case law, it would wait to consider discovery and the applicability of FOIA exemptions until the government moved for summary judgment).

6

## II.     FEMA Is Diligently And Expeditiously Processing Records

As discussed in the accompanying declaration, Ex. A, FEMA is in the midst of processing many voluminous documents based on its search for records responsive to Plaintiffs' broad FOIA request. Plaintiffs have requested "*all data* including but not limited to modeling data used to calculate [National Flood Insurance Program (NFIP)] flood insurance premiums in St. Charles Parish, Louisiana, in Risk Rating 2.0," FEMA's actuarial update to premium calculations across the NFIP. Compl. ¶ 20, Dkt. 1 (emphasis added). Plaintiffs' Opposition acknowledges that such calculations, including for the Parish, take account a range of factors, including "property characteristics, flood types, frequency of flooding, foundation types, and distance to flooding sources, as well as mitigation efforts and community programs." Dkt. 16 at 5–6. FEMA is working diligently and expeditiously to process records containing such information as it pertains to Plaintiffs' FOIA request, and to process other potentially responsive records. The agency's ongoing efforts to achieve this work is consistent with the ordinary course of FOIA litigation, and Plaintiffs have not proven otherwise in the brief four months that this litigation has been pending.

Several FEMA employees are working to process 85 documents—totaling 12,904 pages—in response to Plaintiffs' FOIA request. Ex. A ¶ 3. These documents range in file types: Many are readily accessible and reviewable documents (such as pdfs and excel files), whereas some are complex and technical modeling data files that require specialized software. Beyond diligently working to process the large number and size of potentially responsive records, FEMA also is working closely with the multiple external vendors[2] involved in the development of the Risk

---

[2] This includes Milliman, Inc., the leading actuarial firm that FEMA contracted with to develop the risk modeling software undergirding Risk Rating 2.0, as well as the other companies that Milliman worked with, and that FEMA licensed software from, to develop the risk models: KatRisk LLC, Verisk Analytics, Inc., and CoreLogic, Inc.

Rating 2.0 modeling—who themselves store much of the technical data at issue—to transfer and process potentially responsive records, and to make determinations as to what can be produced and what must be withheld as proprietary.

FEMA has made considerable progress in its processing of records. FEMA anticipates that it will be able to complete its initial processing of records, finalize its review, and make an initial production to Plaintiffs on or before October 6, 2023, with monthly productions thereafter as needed. *Id.* ¶ 4; *see, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of State*, No. 1:22-cv-1066 (D.D.C. June 17, 2022), Minute Order (similar).[3]

And because FEMA anticipates—based on its in-progress processing of records—that certain responsive records are exempt from disclosure under FOIA, it is also willing to negotiate with Plaintiffs and propose to the Court a potential summary judgment briefing schedule. FEMA is willing to do so after its October 6 initial production, with the understanding that the proposed schedule (1) would be for one round of summary judgment briefing at the end of all productions; and (2) could need to shift based on the number of monthly productions occurring after October 6. The agency is also willing to negotiate and propose a briefing schedule after the conclusion of its productions—once the necessity and scope of any summary judgment briefing is more apparent. FEMA reached out to Plaintiffs' counsel in mid-July and spoke on the phone with counsel on July 24 for the express purpose of determining a possible briefing schedule.

---

[3] During the telephonic meet and confer prior to FEMA filing its Motion, Plaintiffs' counsel indicated that Plaintiffs would pursue their pre-summary judgment discovery request even if FEMA was in a position to make representations at the parties' preliminary conference call with the case manager about a possible schedule for records processing and productions—processing and productions that could completely obviate Plaintiffs' stated need for discovery.

Each of the representations above and in FEMA's accompanying declaration illustrate that this is an ordinary FOIA case, and that the agency, in working diligently and expeditiously to respond to Plaintiffs' FOIA request, is operating in good faith.

Plaintiffs' assertions that FEMA's conduct "is a quintessential case of bad faith" and that the agency "[c]learly" has not conducted a "sufficient search" are, at this early point in the litigation, pure speculation.  Dkt. 16 at 2, 5.  Without seeing what FEMA has produced and withheld or seeing FEMA's summary judgment submissions—submissions that would speak directly to the adequacy of FEMA's search and its good faith—Plaintiffs have no basis to make these assertions and thus have no basis to seek discovery to investigate them.

To the extent Plaintiffs ignore these established principles and nonetheless assert that FEMA's "delay" shows bad faith, Dkt. 16 at 6, that argument is not only premature.  It is also wrong.  It has only been ten months since Plaintiffs first submitted their broad FOIA request, and four months since they filed suit.  *See, e.g.*, *Holt v. U.S. Dep't of Just.*, 734 F. Supp. 2d 28, 37 (D.D.C. 2010) (plaintiff did not show that agency taking seven years to respond to FOIA request showed bad faith); *Wheeler*, 462 F. Supp. 2d at 54 (one-year delay in conducting search did not show bad faith); *McLean on behalf of J.N.M. v. Soc. Sec. Admin.*, No. 17-CV-6978 (CM) (KHP), 2019 WL 2495333, at *5 (S.D.N.Y. Jan. 2, 2019) ("An agency's initial delay in responding to a FOIA request—even delays of several years—is not evidence of bad faith."), *report and recommendation adopted*, 2019 WL 1074273 (S.D.N.Y. Mar. 6, 2019); *Amnesty Int'l USA v. CIA*, No. 07 CIV. 5435 (LAP), 2008 WL 2519908, at *9 (S.D.N.Y. June 19, 2008) (no bad faith where agency's accusation of delay ignored the breadth of the agency's search).  As discussed, FEMA has been actively working to respond to Plaintiffs' broad FOIA request—which extends well

9

beyond the already publicly released data that Plaintiffs' reference, Dkt. 16 at 5–6—so there has been no "delay," let alone an unjustified one.

Finally, FEMA's initial, categorical withholding of all responsive records under Exemption 4 before this litigation began does not show bad faith. *Id.* at 5. Plaintiffs' own Complaint and Opposition undercut their argument. As Plaintiffs admit, FEMA did not maintain its initial withholding of all records. Dkt. 16 at 2–3; Compl. ¶¶ 28, 30. Instead, in response to Plaintiffs' administrative appeal, FEMA "initiat[ed] a second search for responsive records" and committed to "determining the applicability of FOIA Exemption 4, which was previously used to withhold" records, and it asked for "specific examples" so that it could "ensure" it was "providing … the exact information sought," and not simply disclosing already public information. Dkt. 16-4 at 1; *see* Compl. ¶ 28. And FEMA informed Plaintiffs that the second search had been completed, and that it was awaiting the transfer of records. Dkt. 16-6 at 1; Compl. ¶ 28. But Plaintiffs rejected FEMA's efforts to work collaboratively on a second search and processing of records, and instead brought this suit. Now, Plaintiffs' unwarranted discovery request hinders FEMA's efforts to facilitate the resolution of their FOIA request and this case.

## CONCLUSION

FEMA respectfully requests that the Court grant its Motion for a Protective Order Precluding Discovery.

Dated:  September 5, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Yoseph T. Desta*
YOSEPH T. DESTA (CA Bar No. 332179)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Phone: 202-305-3080
Email:  Yoseph.T.Desta@usdoj.gov

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2023, the foregoing was filed electronically through ECF/CM. On this same date, electronic service will be made to all counsel of record through the Court's ECF/CM system.

/s/ *Yoseph T. Desta*
YOSEPH T. DESTA
Trial Attorney, U.S. Department of Justice