UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ST. CHARLES PARISH, LOUISIANA AND MATTHEW JEWELL, IN HIS OFFICIAL CAPACITY AS PARISH PRESIDENT<br>          *Plaintiffs*, | CIVIL ACTION: 23-cv-1369 |
| v. | JUDGE DARREL JAMES PAPILLION |
| FEDERAL EMERGENCY MANAGEMENT AGENCY<br>          *Defendant*. | MAGISTRATE JUDGE MICHAEL B. NORTH |

STATEMENT OF UNCONTESTED FACTS

Pursuant to Local Rule 56.1, Plaintiffs St. Charles Parish and Parish President Matthew Jewell (collectively the "Parish") submits the following statement of facts of which there is no genuine dispute:

**The Parish's FOIA Request**

1.  Since the implementation of FEMA's Risk Rating 2.0, a St. Charles Parish property owner has experienced on average over a 230% premium increase for flood insurance in the NFIP.[1]

2.  In some instances, NFIP premiums have even exceeded a 700% increase for a St. Charles Parish homeowner.[2]

3.  The Parish has felt this impact directly, as insurance premiums on many Parish-owned properties have sharply increased causing budgetary constraints on the Parish.[3]

---

[1] **Exhibit D**, Declaration of Matthew Jewell ("**Jewell Decl.**") ¶ 9.
[2] Jewell Decl. ¶ 10.
[3] *Id*. ¶ 8.

4.  In addition, since flood insurance is a mandatory requirement by lenders for most, if not all, single family property owners who have a mortgage, this issue presents an immediate and urgent concern to the Parish leadership and their constituents.[4]

5.  The Parish desired to obtain data from FEMA to assist in making policy decisions and informing its citizens of ways to positively impact the negative effects of the flood insurance premium crisis.[5]

6.  On November 3, 2022, the Parish submitted a straightforward FOIA request to FEMA:

    > "Please provide all data including but not limited to modeling data used to calculate NFIP flood insurance premiums in St. Charles Parish, Louisiana, in Risk Rating 2.0."[6]

7.  On November 23, 2022, FEMA sought clarity in connection with the request to "help the search tasker in finding records."[7]

8.  That same day, the Parish responded and provided the requested clarity, explaining:

    > The NFIP uses risk modeling to determine how much premium to charge participants who participate in the flood insurance program. I am requesting the risk model used to assign premiums to St. Charles Parish residents. I believe Milliman was the company that did the modeling for FEMA.  Does this help narrow the request?[8]

9.  FEMA informed the Parish that it would request additional information if needed.[9]

10. FEMA conducted its first search for documents on November 25, 2022, and ended its search on January 6, 2023.[10]

---

[4] Jewell Decl. ¶ 11.
[5] *Id*. ¶¶ 19-20.
[6] *Id*. ¶ 21.
[7] *Id*. ¶ 22 and Ex. 1, at 2-3.
[8] Jewell Decl. ¶ 23 and Ex. 1, at 2.
[9] Jewell Decl. ¶ 24 and Ex. 1, at 2.
[10] R. Doc. 31-2 ¶ 16.

11. On January 27, 2023, FEMA issued a "standardized" Final Response informing the Parish that it would not release the requested records because the information was confidential and considered trade secrets pursuant to Exemption 4 under 5 U.S.C. § 552.[11]

12. Because FEMA had received other FOIA requests from other individuals for trade secret data related to NFIP, it interpreted the Parish's request in the same manner and used that same standardized response.[12]

13. The Final Response did not provide any information regarding whether FEMA had conducted a search, whether responsive documents had been located, and what documents, if any, were withheld pursuant to Exemption 4.[13]

**The Parish's Administrative Appeal**

14. The Parish submitted a timely administrative appeal of FEMA's Final Response on February 27, 2023.[14]

15. In its appeal letter, the Parish made clear that its FOIA request was not seeking third party proprietary data or any type of algorithm FEMA used to calculate the premiums in Risk Rating 2.0, but rather it sought data "crucial to the residents of St. Charles Parish."[15]

16. The Parish further noted that due to the vagueness of the Final Response, it was impossible to understand FEMA's position on the exempted documents because the Final Response did not describe the documents reviewed or located or how it determined the documents were trade secrets.[16]

---

[11] Jewell Decl. ¶ 25 and Ex. 2; R. Doc. 31-2 ¶ 21.
[12] R. Doc. 31-1, at 9; R. Doc. 31-2 ¶ 21.
[13] Jewell Decl. ¶ 26 and Ex. 2.
[14] Jewell Decl. ¶ 27 and Ex. 3.
[15] Jewell Ex. 3, at 2.
[16] *Id*. at 3.

3

17. FEMA, "prompted by Plaintiffs' administrative appeal," began a second search for records on March 8, 2023.[17]

18. On March 16, 2023, FEMA again requested clarity with regard to the request, asking for examples of the data that the Parish was requesting.[18]

19. The Parish, in an effort to cooperate and communicate with FEMA, responded on March 23, 2023, noting that its request for clarity was almost identical to its prior correspondence and also noting that the Parish could not identify for FEMA what data FEMA itself possessed, hence the reason for the request.[19]

20. FEMA concluded its second search on April 3, 2023.[20]

21. On April 14, 2023, a representative of FEMA informed the Parish that a second search had been conducted, the Disclosure Branch was awaiting transfer of the records, and it anticipated receiving the records "soon."[21]

**The Parish's FOIA Lawsuit**

22. Having constructively exhausted its administrative remedies and left with no other recourse, the Parish initiated this lawsuit on April 25, 2023.[22]

23. On August 11, 2023, the Parish served written discovery requests to FEMA related to the scope of FEMA's search and its application of Exemption 4.[23]

24. FEMA objected to the discovery requests and, on August 22, 2023, filed a motion for protective order to resist the inquiries of any discovery for any purpose at all.[24]

---

[17] R. Doc. 31-2 ¶ 16.
[18] Jewell Decl. ¶ 28 and Ex. 4.
[19] Jewell Decl. ¶ 29 and Ex. 5.
[20] R. Doc. 31-2 ¶ 16.
[21] Jewell Decl. ¶ 30 and Ex. 6.
[22] R. Doc. 1.
[23] **Exhibit F**, Plaintiffs' Interrogatories and Requests for Production to FEMA, August 11, 2023.
[24] R. Doc. 12.

25. In its memorandum in support of the motion for protective order, FEMA admitted that it "ha[d] not yet completed its processing of records."[25]

26. Judge North denied FEMA's motion in part and ordered FEMA to respond to the Parish's discovery requests that would explain how FEMA conducted its search.[26]

27. Judge North noted that "[t]hese facts – most notably FEMA's blanket invocation of confidentiality over documents that appear, at least to some extent, to be publicly available (rec. doc. 16-7) – call into question the adequacy of FEMA's search for documents and whether it has responded in good faith."[27]

28. FEMA answered the discovery responses on September 20, 2023, wherein it noted that after its "second" search, FEMA discovered 12,904 pages of potentially responsive documents.[28]

29. FEMA began producing the documents to the Parish on September 23, 2023 and concluded its production on March 12, 2024.[29]

**FEMA's Search Procedures**

30. FEMA did not conduct a search for records responsive to the Parish's request on November 25, 2023.[30]

31. FEMA's justification for not conducting a search at all is because it "interpreted Plaintiffs' request for 'all data . . . used to calculate' NFIP premiums in St. Charles Parish as an

---

[25] R. Doc. 12-1, at 7.
[26] R. Doc. 21.
[27] *Id*. at 2 (emphasis added).
[28] **Exhibit G**, FEMA's September 20, 2023 Responses to Plaintiffs' Interrogatories and Requests for Production of Documents.
[29] *See* R. Doc. 31-2 ¶ 40.
[30] *Id*. ¶ 20.

indirect way of seeking the trade-secret geospatial information that feeds into the rating engine for Risk Rating 2.0 . . . ."[31]

32. In FEMA's January 27, 2023 Final Response to the Parish, FEMA did not produce responsive records but merely referred the Parish to OpenFEMA, a general online database of information not specific to Risk Rating 2.0 or insurance premiums but that contains information from FEMA's various programs.[32]

33. The Parish affirmed in its appeal of FEMA's Final Response on February 27, 2023 that it did not seek proprietary data but rather any input and output data crucial to St. Charles Parish residents that will assist the Parish in understanding the risk rating to protect and advance the interest of its citizens.[33]

34. Upon receipt of the Parish's appeal, FEMA commenced its "second" search on March 8, 2023.[34]

35. FEMA complains that the Parish's appeal was "vague as to the specific data" requested, so it unilaterally determined only the Milliman data used to create Risk Rating 2.0 methodology "to be the potential focus of Plaintiffs' request."[35]

36. In conducting the "second" search, FEMA decided that responsive records included non-publicly-available "Milliman data (and subsumed data from the other catastrophe modeling vendors) underlying Risk Rating 2.0."[36]

---

[31] R. Doc. 31-2 ¶ 20.
[32] *See* Jewell Ex. 2.
[33] Jewell Decl. ¶ 27 and Ex. 3.
[34] R. Doc. 31-2 ¶ 25.
[35] *Id*. ¶ 26.
[36] *Id*. ¶ 29.

37. FEMA decided that "all the Milliman data potentially responsive to Plaintiffs' request" was contained in records "previously collected but had not yet [been] released for a prior FOIA request from a separate requester," a request numbered 2022-FEFO-00776.[37]

38. Request 2022-FEFO-00776 sought "[a]ll actuarial communications, reports, spreadsheets, data files, and other records provided to FEMA by Milliman, Inc. in connection with Milliman's work under Risk Rating 2.0."[38]

39. FEMA searched these 2022-FEFO-00776 materials between March 24, 2023 and April 3, 2023 and determined this database had all of the records potentially responsive to Plaintiffs' request.[39]

40. FEMA further determined that "the records in the repository of Milliman documents . . . accompanied by publicly-available exhibits on FEMA's website, provide all that is necessary to calculate a Risk Rating 2.0 premium for a specific building in St. Charles Parish or any other location."[40]

41. FEMA points to and describes this "publicly available information" to the Parish for the first time in the Hines Declaration.[41]

42. FEMA completed its work on the search for records on April 3, 2023, and "anticipated issuing a response to Plaintiffs and beginning to provide responsive material soon after April 19, once it had publicly released the full risk-rate data on its website and could also direct the requester to these public materials."[42]

---

[37] R. Doc. 31-2 ¶ 29.
[38] *Id.* ¶ 30.
[39] *Id.* ¶ 32.
[40] *Id.* ¶ 33.
[41] *See* Jewell Decl. ¶ 31.
[42] R. Doc. 31-2 ¶ 38.

43. FEMA did not tell the Parish when the referenced "publicly-available" material in fact became publicly available or was published on FEMA's website.[43]

44. Because FEMA did not communicate this information to the Parish, the Parish's only remedy was to expend more public resources to file this suit on April 25, 2023 after exhausting its administrative remedies.[44]

**FEMA's Production is Obviously Incomplete**

45. FEMA ultimately produced 13,065 pages of records, the vast majority of which were not redacted or considered confidential.[45]

46. To assist with the review of the document production, the Parish retained a renowned expert, Dr. Joseph Suhayda who has over 30 years of experience in coastal physical process, coastal engineering, marine geotechnics, hurricane flooding, and oceanographic design criteria.[46]

47. Dr. Suhayda was retained to assist the Parish in analyzing FEMA's production, provide advice on documents that should have been produced, and to assist in understanding how the Parish can make critical policy decisions and adequately inform its citizens based on the data and information FEMA ultimately provides to the Parish.[47]

48. The records produced by FEMA primarily address insurance variables and property characteristics that are countrywide in scope and not specific to St. Charles Parish – as requested.[48]

---

[43] Jewell Decl. ¶ 31.
[44] *See id.* ¶ 32.
[45] R. Doc. 31-2 ¶ 40.
[46] **Exhibit H**, Declaration of Joseph Suhayda ("**Suhayda Decl.**") ¶ 3.
[47] Suhayda Decl. ¶ 4.
[48] Suhayda Decl. ¶ 7 and Ex. 1.

49. FEMA's production contains very limited amount of data specific to even Louisiana, and there was no data in the production that provided specific information concerning calculating insurance premiums in St. Charles Parish.[49]

50. Dr. Suhayda has reviewed FEMA's production, numerous public FEMA documents and reports related to Risk Rating 2.0, and determined that FEMA has in its possession data and information that would be highly valuable to the elected officials in St. Charles Parish, as it was originally requested.[50] For example, the key Risk Rating 2.0 Methodology Report explains the data used by FEMA and Milliman in creating Risk Rating 2.0.[51]

51. Based on Dr. Suhayda's review of the documents FEMA has produced and/or that are publicly available for review, the following list is a non-exhaustive sampling of documents that are now known to exist and are responsive to the Parish's request and have not been produced or have been broadly identified as exempt:

   a. Premium Calculation Worksheet Input Data for each individual property in St. Charles Parish;

   b. Premium Calculation Worksheet Output Data for each individual property in St. Charles Parish;

   c. Historic Flood Claims Data specific to the Parish;

   d. The map of Risk Rating 2.0 Premium Estimates for the Parish, which was previously available on the FEMA READYYOURRISK.COM website;

---

[49] Suhayda Decl. ¶ 8.
[50] *Id*. ¶¶ 5-6.
[51] *Id*. ¶ 6; *see* Methodology Report; *See* R. Doc. 31-2 ¶ 30 (citing same).

e.  Redacted copies of all technical reports and communications by any consultants who

completed any modeling to either FEMA or Milliman that included FEMA inputs or

was selected by FEMA as part of the Risk Rating 2.0 premium calculation, including,

but not limited to:

   i.  Atkins;

   ii.  Mapping Data Integration Model Documentation Version 2.0 (February 13,

   2020);

   iii.  KatRisk Data and Technical Documentation (February 2018);

   iv.  AIR Inland Flood Model for the United States (June 2016);

   v.  AIR Hurricane Model for the United States (June 2017);

   vi.  RQE v. 18.0 US Flood Model Principles and Methodology (July 2018); and

f.  Any documentation confirming the list of levees in the Parish considered as part of

the Risk Rating 2.0 and reasons for exclusion of any levees.[52]

Respectfully submitted,

**ADAMS AND REESE LLP**

*/s/ Erica P. Sensenbrenner*
CHRISTOPHER J. KANE (#29282)
ERICA P. SENSENBRENNER (#38400)
701 Poydras Street, Suite 4500
New Orleans, LA 70l39
Telephone: (504) 58l-3234
Facsimile:  (504) 566-0210
Christopher.Kane@arlaw.com
Erica.Sensenbrenner@arlaw.com

**AND**

---

[52] Suhayda Decl. ¶ 9.

COREY M. OUBRE (#28709)
Director of Legal Services
St. Charles Parish
723 Paul Maillard Road
Luling, LA 70070
Telephone: (985) 783-5013
Facsimile:  (985) 307-0861
cmoubre@stcharlesgov.net

**AND**

ROBERT L. RAYMOND (#11408)
Assistant Director of Legal Services
St. Charles Parish
14108 River Road
Destrahan, LA 70047
Telephone: (985) 783-5013
Facsimile:  (985) 307-0861
rraymond@stcharlesgov.net

***Attorneys for Plaintiffs***