UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ST. CHARLES PARISH, LOUISIANA AND MATTHEW JEWELL, IN HIS OFFICIAL CAPACITY AS PARISH PRESIDENT<br>   *Plaintiffs*,<br><br>v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY<br>   *Defendant*. | CIVIL ACTION: 23-cv-1369<br><br><br>JUDGE DARREL JAMES PAPILLION<br><br><br>MAGISTRATE JUDGE MICHAEL B. NORTH |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.2, in opposition to Defendant's Motion for Summary Judgment, Plaintiffs, St. Charles Parish and Parish President Matthew Jewell (together, the "Parish"), respectfully submits the following response to each of the Defendant's Statement of Undisputed Material Facts:

1. Risk Rating 2.0 is FEMA's actuarial update to premiums for the National Flood Insurance Program ("NFIP"), which is the flood insurance program that FEMA administers. *See e.g.*, Dec. of Tammi Hines ("Hines Decl.") ¶ 10.

  **RESPONSE: Admitted.**

2. Risk Rating 2.0 relies on catastrophic modeling, which is a computerized process that simulates potential disaster events (based on historical event data, scientific research, engineering methods, and statistical analysis) and then generates scenarios of disaster frequency, severity, and location. *Id.* ¶ 12.

**RESPONSE: The Parish denies this statement to the extent it suggests that the all input and output data in Risk Rating 2.0 is confidential trade secret information and exempted under FOIA.**

3.  FEMA hired Milliman, Inc., to assist with the development of Risk Rating 2.0 premiums, and the agency hired three other vendors, CoreLogic, Inc., KatRisk, LLC and Verisk Analytics, Inc for the Risk Rating 2.0 catastrophic modeling. *Id*. ¶¶ 11, 13, 55.  Milliman relied on modeling data and models from the three other vendors, and all of its actuarial output thus incorporated the data and analysis from the other three catastrophic modeling vendors. *Id*.

**RESPONSE: The Parish denies this statement to the extent it suggests that all input and output data in Risk Rating 2.0, and all data provided to FEMA's contractors by FEMA, is confidential trade secret information and exempted under FOIA.**

4.  Plaintiffs, St. Charles Parish and parish president Matthew Jewell, submitted a FOIA request to FEMA on November 3, 2022, seeking "all data including but not limited to modeling data used to calculate NFIP flood insurance premiums in St. Charles Paris, Louisiana, in Risk Rating 2.0." *Id*. ¶ 14 (quotation marks omitted).

**RESPONSE: Admitted.**

5.  On November 23, 2023, Plaintiffs clarified their FOIA request, stating: "[t]he NFIP uses risk modeling to determine how much premium to charge participants who participate in the flood insurance program.  I am requesting the risk model to assign premiums to St. Charles Parish residents.  I believe Milliman was the company that did the modeling for FEMA[.]"

**RESPONSE: Admitted, but the Parish adds that it provided clarity only in response to FEMA's November 23, 2023 request. By providing the requested clarity, the Parish did not submit a separate request or otherwise deviate from its original request.**

6.  FEMA initially misinterpreted Plaintiffs' FOIA request as seeking trade-secret information in the agency's ratings engine for generating premiums, and accordingly the agency

applied Exemption 4 to categorically withheld Risk Rating 2.0 records on January 27, 2023. *Id*. ¶¶ 20-22.

**RESPONSE: Regarding FEMA's statement that it allegedly misconstrued the request, the Parish denies this statement for lack of sufficient information to justify a belief in the truth therein. The Parish admits that FEMA did apply Exemption 4 to the request and categorically withhold documents, but notes that FEMA did not review any records or determine whether the records were properly withheld under Exemption 4 before issuing the final response on January 27, 2023.**

7.      On February 27, 2023, Plaintiffs administratively appealed FEMA's determination. *Id*. at ¶ 23.

**RESPONSE: Admitted.**

8.      In response to Plaintiffs' appeal, FEMA re-examined Plaintiffs' FOIA request, determined that it had misinterpreted the request as seeking trade-secret ratings-engine information, and concluded that Plaintiffs' request for risk modeling data used to calculate NFIP premiums in St. Charles Parish sought the Milliman data undergirding Risk Rating 2.0. *Id*. ¶¶ 25-29.

**RESPONSE: The Parish denies this statement for lack of sufficient information to justify a belief in the truth therein.**

9.      Between March 23, 2023, and April 3, 2023, FEMA determined that records the agency had FEMA had [sic] previously collected but had not yet released for a prior FOIA request from a separate requester contained all the Milliman data (and subsumed modeling data from the other catastrophe modeling vendors) potentially responsive to Plaintiffs' request. *Id*. ¶ 29.

**RESPONSE: The Parish denies this statement for lack of sufficient information to justify the truth therein.**

10. The prior FOIA request, an August 17, 2022, FOIA request, had sought "[a]ll actuarial communications, reports, spreadsheets, data files, and other records provided to FEMA by Milliman, Inc. in connection with Milliman's work under Risk Rating 2.0." *Id*. ¶ 30 (quotation marks omitted). As the prior request had noted, FEMA's January 18, 2022 public report titled *Risk Rating 2.0 Methodology and Data Sources* had stated that Milliman had worked for FEMA to develop Risk Rating 2.0 and that "Milliman's work under Risk Rating 2.0 has been fully documented in over 40 separate actuarial communications to FEMA provided over the course of the engagement, including both actuarial reports and other formats such as spreadsheets and electronic data files." *Id*. (quotation marks omitted).

**RESPONSE: The Parish denies this statement for lack of sufficient information to justify a belief in the truth therein.**

11. In November 2022, FEMA conducted a search for this prior FOIA request by (a) locating a shred electronic database repository containing all actuarial communications, reports, spreadsheets, data files and other records provided to FEMA by Milliman in connection with Milliman's work for Risk Rating 2.0, and then (b) confirming the comprehensiveness of the repository. *Id*. ¶ 31.

**RESPONSE: The Parish denies this statement for lack of sufficient information to justify a belief in the the truth therein.**

12. For Plaintiffs' FOIA request in this case, FEMA reviewed the previously collected Milliman documents and confirmed that they had all risk modeling records potentially responsive to the request. *Id*. ¶¶ 32-33, 36-37.

**RESPONSE: The Parish denies this statement for lack of sufficient information to justify a belief in the truth therein.**

13.     FEMA produced all the previously collected actuarial records, as well as three separate risk modeling contracts, to Plaintiffs, in monthly rolling productions totaling 13,065 pages. *Id*. ¶ 40.

**RESPONSE: The Parish denies this statement for lack of sufficient information to justify a belief in the truth therein, except to admit that FEMA did eventually produce a total of 13,065 pages of records to the Parish in rolling productions.**

14.     The produced records and publicly available information that FEMA has directed Plaintiffs to contain all the information that Plaintiffs need to understand the risk modeling used to generate premiums in St. Charles Parish, and to understand how those premiums are calculated for a given building in the parish. *Id*. ¶¶ 32-34, 36-37.

**RESPONSE: Denied. FEMA misapplies the standard under FOIA and reaches an improper and incorrect legal conclusion. The production hardly contained any information relevant to Louisiana and no information specific to St. Charles Parish, as requested.**

15.     FEMA applied FOIA Exemption 4 and 5 to redact certain information in the records that it produced to Plaintiffs. *Id*. ¶¶ 42-43.

**RESPONSE: The Parish admits that FEMA applied Exemptions 4 and 5 to part of the production, but it does not admit or make any determination as to whether the application of the exemptions was appropriate. The exemptions were applied to documents that are not responsive to the Parish's request.**

16.     FEMA applied Exemption 4 to withhold certain line-item contract terms—showing, *e.g.,* the "Quantity," "Unit Price," "Amount," "Funded," and "labor hour billing" figures"—in the Federal Acquisition Regulation-based contracts that CoreLogic, KatRisk, and Milliman submitted to contract with FEMA. *Id*. ¶ 71; *id*., *Vaughn* Index. The withheld contract terms are obtained from a person because they are the vendors own; are commercial because they

constitute basic information; and are confidential because they are customarily kept private by the vendors. *See id*. ¶¶ 78-79.

**RESPONSE: The Parish denies this statement because it is a legal conclusion. The exemptions were applied to nonresponsive materials, and the Parish makes no determination as to whether FEMA properly applied the exemption.**

17. FEMA also applied Exemption 4 to withhold modeling output information generated by CoreLogic, KatRisk, and Verisk from their catastrophe models. *Id*. ¶ 55; *id*., *Vaughn* Index. The withheld information was obtained from a person because it was generated directly by the vendors' catastrophe models; is commercial because FEMA obtained it by licensing the vendors' catastrophe models in a commercial transaction and because the output information reflects the models' proprietary assumptions and data, which is intrinsically valuable and can be exploited by the vendors' competitors; and is confidential because the vendors closely guard their model data in a variety of ways, including using specific contract and license agreement language restricting access and dissemination, as they did here with FEMA. *Id*. ¶¶ 55-69.

**RESPONSE: The Parish denies this statement because it is a legal conclusion. The exemptions were applied to nonresponsive materials, and the Parish makes no determination as to whether FEMA properly applied the exemptions.**

18. FEMA applied Exemption 5 to withhold, under the deliberative-process privilege, portions of a draft internal rate-setting record (the "Target Rate Level" exhibit documents) with premium and model data. *Id.* ¶ 82; *id*., *Vaughn* Index. The draft FEMA document, generated in coordination with the agency's contracted vendor, Milliman, *id*. ¶¶ 11, 13, 29-33, contains pre-decisional and deliberative risk-rating data that is not incorporated in Risk Rating 2.0 premiums—it was superseded by the final risk-rating data in the final Target Rate Level exhibit that FEMA

produced to Plaintiffs and applied Exemption 4 redactions to—and contains incorrect rating information that could confuse the public, *id*. ¶¶ 82-83.

**RESPONSE: The Parish denies this statement because it is a legal conclusion. The exemptions were applied to nonresponsive materials, and the Parish makes no determination as to whether FEMA properly applied the exemptions.**

19.     FEMA also applied Exemption 5 to withhold contract in-force dates—the cutoff dates for the NFIP flood insurance policies that it includes as inputs for catastrophe modeling—in its internal rate-setting records also generated in coordination with its contracted vendor, Milliman. *Id*. ¶¶ 11, 13, 29-33, 89-90; *id.*, *Vaughn* Index. That information is commercial and confidential because it relates directly to FEMA's NFIP rate-setting analysis, and because the private insurers that FEMA negotiates and contracts with to purchase reinsurance coverage for excess NFIP losses could (a) utilize this information to derive the private, closely-guarded adjustment factors that FEMA applies internally to catastrophe model outputs to internally assess flood risks and losses, and (b) utilize this private information to gain leverage in reinsurance negotiations and force FEMA to accept higher reinsurance premiums and/or less reinsurance coverage. *Id*. ¶¶ 89-92.

**RESPONSE: The Parish denies this statement because it is a legal conclusion. The exemptions were applied to nonresponsive materials, and the Parish makes no determination as to whether FEMA properly applied the exemptions.**

Respectfully submitted,

**ADAMS AND REESE LLP**

*/s/ Erica P. Sensenbrenner*
CHRISTOPHER J. KANE (#29282)
ERICA P. SENSENBRENNER (#38400)
701 Poydras Street, Suite 4500
New Orleans, LA 70l39
Telephone: (504) 58l-3234
Facsimile:  (504) 566-0210
Christopher.Kane@arlaw.com
Erica.Sensenbrenner@arlaw.com

>           COREY M. OUBRE (#28709)
>           Director of Legal Services
>           St. Charles Parish
>           723 Paul Maillard Road
>           Luling, LA 70070
>           Telephone: (985) 783-5013
>           Facsimile:  (985) 307-0861
>           cmoubre@stcharlesgov.net
>
>           ROBERT L. RAYMOND (#11408)
>           Assistant Director of Legal Services
>           St. Charles Parish
>           14108 River Road
>           Destrahan, LA 70047
>           Telephone: (985) 783-5013
>           Facsimile:  (985) 307-0861
>           rraymond@stcharlesgov.net
>
>           ***Attorneys for Plaintiffs***