## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| ST. CHARLES PARISH, A POLITICAL SUBDIVISION OF THE STATE OF LOUISIANA, AND MATTHEW JEWELL, IN HIS OFFICIAL CAPACITY AS ST. CHARLES PARISH PRESIDENT, <br><br> *Plaintiffs*, <br><br> v. <br><br> FEDERAL EMERGENCY MANAGEMENT AGENCY, <br><br> *Defendant*. | Civil Action No. 2:23-cv-01369 <br><br> Section P <br><br> Judge Papillion <br><br> Magistrate Judge North |

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND INCORPORATED REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT .................................................................................................................................2

    I.    Plaintiffs Concede that FEMA's Withholdings Are Proper .........................................2

    II.    Plaintiffs Fail to Show that FEMA's Search Was Inadequate ......................................2

        A.    Plaintiffs' Attacks on FEMA's Search Process Are Immaterial and Unfounded...............2

        B.    Plaintiffs Ignore the Plain Text of Their FOIA Request, Which They
            Limited to Milliman Risk Modeling Data..................................................................5

        C.    Plaintiffs Improperly Seek to Expand Their FOIA Request to Cover "Missing"
            Non-Milliman, Non-Risk Modeling Records that They Only Speculate Exist ...............14

            1.    The Declaration of Plaintiffs' Alleged Expert Is Improper and
                Does Not Establish that Any Responsive Records Are Missing...........................14

            2.    Plaintiffs Fail to Establish that Any Responsive Records Are Missing ...............18

    III.    Plaintiffs' Attorney Fees and Costs Arguments Are Premature....................................22

CONCLUSION.............................................................................................................................25

## INTRODUCTION

Plaintiffs' Memorandum in Support of Cross-Motion for Summary Judgment and Incorporated Opposition to FEMA's Motion for Summary Judgment ("Pls.' MSJ Mem."), ECF No. 35-1, confirms that the Court should fully rule in FEMA's favor on the propriety of the agency's Freedom of Information Act ("FOIA") withholdings and the adequacy of the agency's search for responsive records. Plaintiffs do not challenge the agency's withholdings, conceding their propriety. And their three challenges to the agency's search are wholly without merit. First, Plaintiffs mount various immaterial and factually unsupported attacks on FEMA's search process. Second, Plaintiffs' efforts to retroactively expand the scope of their FOIA request beyond the Milliman risk modeling data used to calculate premiums in St. Charles Parish—which is exactly what FEMA searched for and produced—are likewise unfounded. Plaintiffs ignore the plain language of their own FOIA request and clarifications to the agency about their request. And third, Plaintiffs' belated identification of allegedly "missing" responsive records does not call into question FEMA's search either. The purported expert declaration that Plaintiffs rely on to identify these "missing" records is improper, and, in any event, the records that Plaintiffs identify are not responsive to their request for Milliman risk modeling data and in many instances do not even exist.

Finally, Plaintiffs' request for attorney fees and costs is premature. Fee-and-cost issues are properly the subject of FOIA litigation *after* resolution of the merits, and Plaintiffs do not identify any basis for an interim fee-and-cost award.[1]

---

[1] Plaintiffs' requested oral argument (ECF No. 36) is at odds with the parties' agreement in their Joint Motion for a Summary Judgment Scheduling Order, ECF No. 25, that the briefing schedule they proposed "w[ould] posture the case for final judgment on the papers alone," *id.* at 2.

**ARGUMENT**

**I.     Plaintiffs Concede that FEMA's Withholdings Are Proper**

After FEMA concluded its production of records, Plaintiffs' counsel indicated by email that Plaintiffs intended to challenge the adequacy of the agency's search and its withholdings.  FEMA thus moved for summary judgment both on its search and on its withholdings under Exemptions 4 and 5, submitting multiple agency and third-party declarations and a *Vaughn* index explaining how the "material withheld is logically within the domain of the exemption claimed." *PHE, Inc. v. Dep't of Just.*, 983 F.2d 248, 250 (D.C. Cir. 1993) (quotation marks omitted); *see* Def.'s Mem. in Supp. of Mot. for Summ. J., ("Def.'s MSJ Mem.") 27–39, ECF No. 31-1.  In response, Plaintiffs cross-moved for summary judgment and opposed FEMA's motion only with respect to the agency's search.  *See* Pls.' MSJ Mem. 2, 12 (disclaiming any interest in proprietary information).  They do not contest or address the propriety of the agency's Exemption 4 and 5 withholdings.  Accordingly, Plaintiffs waived any challenge to the withholdings, and FEMA is entitled to summary judgment on them.  *See, e.g.*, *Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir. 1986) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived."); *Supreme Rice, LLC v. Turn Servs., LLC*, 545 F. Supp. 3d 416, 426 (E.D. La. 2021) (same); *Dutton v. U.S. Dep't of Just.*, 302 F. Supp. 3d 109, 125 (D.D.C. 2018) (granting summary judgment to agency where "plaintiffs do not advance any arguments concerning the legitimacy of [its] withholdings"); *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 213 (D.D.C. 2012) (same).

**II.    Plaintiffs Fail to Show that FEMA's Search Was Inadequate**

**A.     Plaintiffs' Attacks on FEMA's Search Process Are Immaterial and Unfounded**

Plaintiffs spill considerable ink casting spurious attacks on FEMA's search efforts from the time it received their FOIA request up until the agency ultimately produced responsive records.  *See, e.g.*, Pls.' MSJ Mem. 20 (criticizing FEMA for "overcomplicat[ing] the request" by initially interpreting

2

it as seeking rating engine data and for thus failing to search for non-trade-secret information); *id.* at 9, 13, 21 (attacking FEMA's initial blanket invocation of Exemption 4 and the time it took the agency to produce documents).  Their attacks are immaterial and unsupported.

Plaintiffs' complaints are immaterial because the adequacy of FEMA's search is judged by the "totality" of the agency's efforts to locate responsive records, which Plaintiffs ignore.  *Airaj v. United States*, No. CV 15-983 (ESH), 2016 WL 1698260, at *7 (D.D.C. Apr. 27, 2016) (relying on, *inter alia*, *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013)), *aff'd sub nom. Airaj v. U.S. Dep't of State*, No. 16-5193, 2017 WL 2347794 (D.C. Cir. Mar. 30, 2017); *see also, e.g.*, *NYC Apparel FZE v. U.S. Customs & Border Prot.*, 484 F. Supp. 2d 77, 87 (D.D.C. 2007) (adequacy inquiry requires consideration of the totality of circumstances).  Regardless of Plaintiffs' attacks that FEMA erred in its initial request interpretation, search scope and blanket Exemption 4 invocation, and delay in producing records, ultimately, the agency cured any defect.  The agency broadened its search and ultimately produced over 13,000 pages of records comprising precisely the Milliman risk modeling data that Plaintiffs sought.  Overwhelming case law establishes that FEMA's course correction renders its search adequate and safe from legal challenge, *see* Def.'s MSJ Mem. 22–24, which Plaintiffs wholly fail to address.  (In fact, their legal analysis is exceedingly light on authority, citing just a few cases.)  Under these circumstances, there is nothing left for the Court to do.  FEMA's "additional searching, processing, and release of records" that Plaintiffs requested has mooted their search concerns.  *Saldana v. Fed. Bureau of Prisons*, 715 F. Supp. 2d 24, 26 (D.D.C. 2010); *see also, e.g.*, *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) (stating that "however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform").

Plaintiffs' various attacks are, at any rate, unfounded because they fail to adequately address the detailed explanation in the Declaration of Tammi Hines ("Hines Decl."), ECF No. 31-2 (and the similar Declaration of Naomi Ondrich ("Ondrich Decl."), ECF No. 31-5) of each of the agency's

3

search efforts at issue.  As demonstrated below, Plaintiffs' critiques amount to baseless accusations—

illogical bluster that fails to match up against FEMA's sworn and robust justifications.

| Plaintiffs' Critique | FEMA's Good-Faith Explanation |
|---|---|
| Plaintiffs accuse FEMA of "overcomplicat[ing]" their "straightforward" FOIA request—for Risk Rating 2.0 data used to calculate Parish premiums—when the agency originally construed the request as seeking trade-secret rating-engine data.  Pls.' MSJ Mem. 8, 20. | But Plaintiffs fail to undermine FEMA's explanation that it genuinely misunderstood their broadly-worded request as seeking rating engine data because the engine is used to generate premiums, and because the agency had received prior similar requests.  *See* Hines Decl. ¶ 21. Plaintiffs simply accuse FEMA of "attempt[ing] to explain . . . away" its mistaken interpretation, Pls.' MSJ Mem. 20, without engaging with the substance of FEMA's reasonable explanation. |
| Plaintiffs ask how FEMA "could . . . know that all the possible responsive records were exempt or confidential without searching for or reviewing them first." Pls.' MSJ Mem. 21; *see also id.* at 9. | Yet Plaintiffs confoundingly ignore that FEMA's initial blanket invocation of Exemption 4 and failure to search for[2] and produce non-public records is obviously explained by its initial mistaken understanding of their request.[3] |
| Plaintiffs question the months-long window of time between FEMA's completed search and initial production. *See* Pls.' MSJ Mem. 13. | But Plaintiffs ignore that FEMA needed these months to, for the first time, process the thousands of pages it had located.  *See* Hines Decl. ¶¶ 31, 93; Def.'s MSJ Mem. 14.[4] |

---

[2] Plaintiffs suggest that FEMA did not even conduct a search when it first assessed their request as seeking trade-secret information.  *See* Pls.' MSJ Mem. at 12, 20.  Not so.  *See* Hines Decl. ¶¶ 17–20 (describing search, *i.e.*, referral to Region 6, referral to actuaries, and actuaries' search determination). That FEMA's initial assessment was mistaken does not mean it did not conduct a search.

[3] Plaintiffs briefly highlight Chief Magistrate Judge North's probing of FEMA's search and good faith based on its Exemption 4 invocation.  *See* Pls.' MSJ Mem. 11.  But he did not have occasion to resolve the adequacy of the agency's search and its good faith.  *See* Def.'s MSJ Mem. 24.  In granting limited discovery, he instead simply raised initial questions that the agency has fully answered with its summary judgment declarations.  *Cf., e.g.*, *Citizens for Resp. and Ethics in Wash. v. U.S. Dep't of Veterans Affs.*, 69 F. Supp. 3d 115, 119, 122  (D.D.C. 2014) (granting summary judgment on agency's search after previously ordering limited discovery due to questions raised by agency's conduct); *Cole v. Copan*, No. 1:15-CV-1991-EGS-GMH, 2023 WL 2913811, at *4, *6–7 (D.D.C. Feb. 14, 2023) (similar).

[4] Contrary to Plaintiffs' suggestion, *see* Pls.' MSJ Mem. 14, FEMA's explanation of its processing efforts in its protective order submissions confirms, rather than conflicts with, the Hines declaration's explanation.  FEMA explained in those submissions that Plaintiffs' discovery requests were premature and unduly burdensome because FEMA was in the midst of processing the responsive records it had located in its completed search, *i.e.*, it was reviewing the records to protect any FOIA-exempt information.  *See* Mem. in Supp. of Mot. for a Protective Order Precluding Discovery 7, ECF No. 12-1; Reply Mem. in Supp. of its Mot. For a Protective Order Precluding Discovery, Decl. of Rebecca

The side-by-side comparison above lays bare that all Plaintiffs do is cast aspersions that FEMA's actions reflect bad faith, which is plainly insufficient. *See, e.g.*, *Assassination Archives & Rsch. Ctr. v. CIA*, 177 F. Supp. 2d 1, 8 (D.D.C. 2001), *aff'd*, 334 F.3d 55 (D.C. Cir. 2003). However sincere or strongly felt their beliefs are, Plaintiffs' incredulous views, without anything more, simply "do[] not constitute evidence" calling into question FEMA's search. *Bay Area Laws. All. for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1295 (N.D. Cal. 1992). Plaintiffs' unsubstantiated attacks fail to overcome the good faith that attaches to FEMA's sworn, detailed explanation for its search process.

**B.     Plaintiffs Ignore the Plain Text of Their FOIA Request, Which They Limited to Milliman Risk Modeling Data**

Unable to call into question the adequacy of FEMA's search process, Plaintiffs pivot to mounting a two-step maneuver: attacking FEMA's ultimate interpretation of their FOIA request and the documents that interpretation yielded. In particular, Plaintiffs claim (1) that FEMA "improperly narrowed" their FOIA request and thus the agency's search scope by unreasonably construing their request as limited to risk modeling data and Milliman data; and (2) that FEMA's efforts to locate and produce only Milliman risk modeling data further reflects the agency's unreasonable search. Pls.' MSJ Mem. 21–25. But neither claim withstands scrutiny.

**1. Scope of FOIA Request**:  FEMA reasonably interpreted Plaintiffs' FOIA request as seeking risk modeling data provided by Milliman. The plain language of Plaintiffs' FOIA request and subsequent email clarification specifically indicated that they sought "modeling data" and the "risk model used to assign premiums to St. Charles Parish residents," which they correctly identified "Milliman" as the source for; and their appeal reiterated these request parameters (while also

---

Dunn ¶ 3, ECF No. 18-3.  Plaintiffs thus err in claiming FEMA "represented" that "it still had not yet compiled all responsive records as of August 2023." Pls.' MSJ Mem. 14.  Plaintiffs also err in characterizing FEMA's protective order motion as a "hide-the-ball" gambit. *Id.* at 11.  FEMA's motion had merit—Chief Magistrate Judge North granted it in large part.

emphasizing Plaintiffs' desire for "data that is crucial to the residents of St. Charles Parish and will assist in understanding the risk rating").  *See* Def.'s MSJ Mem. 19; Hines Decl. ¶¶ 23–29.  That plain language governs.  *See, e.g., Kowal v. U.S. Dep't of Just.*, 490 F. Supp. 3d 53, 65 (D.D.C. 2020) ("An agency may rely on the plain language of the request itself and proceed accordingly."); *Am. Small Bus. League v. U.S. Off. of Mgmt. & Budget*, 631 F. Supp. 3d 804, 820–21 (N.D. Cal. 2022) (search was reasonable where agency dictated its scope based on plain language of request and subsequent clarification before suit); *Clemente v. FBI*, 741 F. Supp. 2d 64, 79 (D.D.C. 2010) (similar); *Dillon v. U.S. Dep't of Just.*, 444 F. Supp. 3d 67, 86 (D.D.C. 2020) (search was reasonable where scope of agency's search abided by plain language of plaintiff's administrative appeal).  FEMA thus was not obligated to go beyond the express parameters Plaintiffs themselves set and to search for any "input" data that fed into the Risk Rating 2.0 premium calculations in St. Charles Parish or any and all data "related to the setting of premiums in [the] Parish," as Plaintiffs now argue the agency should have done.  Pls.' MSJ Mem. 6, 12, 20; *see, e.g., Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996) (agencies are "not obliged to look beyond the four corners of the request for leads to the location of responsive documents").  No reasonable reading of their FOIA request would cover these additional types of (amorphously described) records, which they identify for the first time in the midst of dispositive briefing.  Settled law prohibits FOIA litigants from retroactively expanding the scope of their requests through post-litigation clarifications, as Plaintiffs attempt to do here.  *See, e.g., Gillin v. IRS*, 980 F.2d 819, 823 (1st Cir. 1992); *Am. Small Bus. League*, 631 F. Supp. 3d at 820; *Dillon*, 444 F. Supp. 3d at 86; *Coss v. U.S. Dep't of Just.*, 98 F. Supp. 3d 28, 34 (D.D.C. 2015); *Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013); *Am. Fed'n of Gov't Emps., Loc. 812 v. Broad. Bd. of Governors*, 711 F. Supp. 2d 139, 150–51 (D.D.C. 2010).

Plaintiffs attack FEMA's interpretation of their FOIA request as unduly narrow, but they fail to back up this claim.  Nothing supports their argument that FEMA should have interpreted their

request to sweep broadly to cover *any* Parish-related data.  Although Plaintiffs are correct that agencies must construe FOIA requests liberally, as drafted, and as covering an "entire set" of identified documents sought even though only a subset of those documents is specifically named, *see* Pls.' MSJ Mem. 22 (relying on *Mobley v. CIA*, 924 F. Supp. 2d 24, 39 (D.D.C. 2013), *aff'd*, 806 F.3d 568 (D.C. Cir. 2015)), these general principles do not undermine FEMA's construction of the specific request language that Plaintiffs themselves used.  Plaintiffs' request (and subsequent clarifications before suing) did not simply name Milliman risk modeling data as a mere "subset" of "heightened interest" records within a set of broader Risk Rating 2.0 records described as being sought.  *Id.* (quotation marks omitted); *see Mobley*, 924 F. Supp. 2d at 39 (similar).  It instead described the Milliman modeling data as *precisely* what Plaintiffs sought.  Accordingly, FEMA reasonably interpreted Plaintiffs' request as seeking records with just that data and appropriately limited its search to this identified universe of records.  *See, e.g.*, *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (affirming search focused on identified documents and where request "gave no indication" requester sought other documents); *Clemente v. FBI*, 867 F.3d 111, 118 (D.C. Cir. 2017) (affirming search that located "the precise records covered by [the] request" and explaining "agency had no obligation to conduct further searches").

Plaintiffs claim it was inappropriate for the agency to ask them "open-ended" clarification questions and use their responses "to improperly narrow the[ir] request and its search."  Pls.' MSJ Mem. 22.  But there was nothing improper about FEMA's straightforward questions seeking clarity on the "specific" records sought and "specific examples of records that fall under 'all data' described in the request."  Hines Decl. ¶¶ 14, 27.  These questions, and FEMA's decision based on Plaintiffs' responses to focus on the Milliman risk modeling data that they identified, instead demonstrate that the agency worked in good faith to properly construe their request and search for responsive risk modeling records.  *See, e.g.*, *Kenney v. U.S. Dep't of Just.*, 603 F. Supp. 2d 184, 188–89 (D.D.C. 2009).

There is simply no reasonable reading of Plaintiffs' FOIA request—"no matter how liberally construed"—that should have conveyed to FEMA that it swept far more broadly, to cover *any* FEMA input information for calculating Parish premiums or any other information related to those calculations. *Bartko v. U.S. Dep't of Just.*, 167 F. Supp. 3d 55, 66 (D.D.C. 2016), *aff'd*, 898 F.3d 51 (D.C. Cir. 2018); *Looks Filmproduktionen GmbH v. CIA*, 199 F. Supp. 3d 153, 169–70 (D.D.C. 2016) (similar). Such information is quite amorphous and expansive. And as a matter of basic insurance and actuarial principles, such information is fundamentally distinct from the Milliman modeling data—the output of catastrophe modeling software used to simulate flood events and generate estimate flood losses for Risk Rating 2.0 rates—that Plaintiffs actually identified. *See* Ondrich Decl. ¶¶ 10–11, 17; Suppl. Decl. of Naomi Ondrich ("Ondrich Suppl. Decl.") ¶¶ 7–11; *see also* Def.'s MSJ Mem. 4–5. As FEMA's declarations confirm, "a professional employee of the agency who was familiar with the subject area of the request" would not reasonably have thought that Plaintiffs' request for Milliman risk modeling data also included FEMA "input" and any other calculation-related records, let alone been able to "locate [these other] record[s] with a reasonable amount of effort." *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (quotation marks omitted). That is dispositive. *See, e.g., McKinley v. FDIC*, 807 F. Supp. 2d 1, 5 (D.D.C. 2011) ("In determining the proper scope of a FOIA request, '[t]he linchpin inquiry is whether the agency is able to determine precisely what records (are) being requested.'" (quoting *Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 326 (D.C. Cir. 1982))).

Whether or not Plaintiffs intended this broader scope all along—despite not communicating it until now—is irrelevant. Agencies "need not expand their searches beyond the four corners of the request, nor are they required to divine a requester's intent." *Am. Chemistry Council*, 922 F. Supp. 2d at 62 (quotation marks omitted); *see also Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984) ("The agency

[is] bound to read [the FOIA request] as drafted, not as . . . [plaintiff] might wish it was drafted.").[5] Their obligation is simply to search for reasonably described records—which in Plaintiffs' FOIA request was just the Milliman risk modeling data that FEMA identified, not all the "input" and premium-related records that Plaintiffs now belatedly seek.

      **2. Identification and Production of Records**:  Based on its reasonable interpretation of Plaintiffs' FOIA request, FEMA appropriately searched for and produced Milliman risk modeling data.  As FEMA's declarations lay out in detail, FEMA (1) identified an existing agency electronic repository of all final Milliman risk modeling data that the agency had located and compiled all files from as part of its work on a prior, similar FOIA request; (2) reexamined the repository, containing thousands of pages, to ensure that it contained all applicable risk model data used to assign premiums, as Plaintiffs had requested; and (3) specifically analyzed how Plaintiffs could use particular exhibits in the technical records collected for production to understand the premiums generated in localities such as St. Charles Parish.  *See* Def.'s MSJ Mem. 19 (relying on Hines Decl. ¶¶ 25–37); *see also* Ondrich

---

[5] Divining Plaintiffs' intent would also be quite a challenge.  Plaintiffs' own interpretation of their FOIA request "has been a moving target," further undermining their attacks on the adequacy of FEMA's search. *Am. Small Bus. League*, 631 F. Supp. 3d at 820.  Consider all the shifting ways that Plaintiffs have framed their request for risk modeling data. *See, e.g.*, Decl. of Matthew Jewell ("Jewell Decl."), Ex. 3, ECF No. 35-5 (appeal stating that "the request seeks the data that is crucial to the residents of St. Charles Parish and will assist in understanding the risk rating . . . ."); Compl. ¶ 6, ECF No. 1 ("Plaintiffs sought the information and data FEMA used to develop and implement Risk Rating 2.0."); Pls.' Mem. in Opp'n to FEMA's Mot. for Protective Order 5–6, ECF No. 16 (claiming that their request sought information such as property characteristics, flood types, and distance to flooding sources "as it relates to locations in St. Charles Parish"); Pls.' MSJ Mem. 1–2 (asserting that their request sought "critical data that forms the basis of FEMA's 'Risk Rating 2.0 methodology' for setting flood insurance premiums in St. Charles Parish."); *id.* at 12 (asserting that they "affirmed" in their appeal that their FOIA request sought "any input and output data"); *id.* at 22 (acknowledging the request language where they explicitly stated they were seeking the "risk model used to assign premiums" in St. Charles Parish, which they identified "Milliman" as the source for, but then stating without explanation that "the Parish did not only request the risk model used to assign premiums" and instead also sought "Parish-related information" and data other than Milliman-created data).

Decl. ¶¶ 13–19).  In short, FEMA searched for and produced precisely what Plaintiffs requested. Plaintiffs nonetheless mount five attacks on FEMA's efforts, none of which is availing.

*First*, Plaintiffs erroneously critique FEMA's decision to identify the results from the prior, similar FOIA request.  Plaintiffs challenge FEMA's decision by claiming that the prior request "[was] a very different request from" theirs, Pls.' MSJ Mem. 25, yet they fail to explain what is "very different."  Nor can they, since their FOIA request sought Milliman risk modeling data, and the prior request likewise sought all final actuarial data files and records provided by Milliman in connection with its work on Risk Rating 2.0, *i.e.*, its risk modeling work.  *See* Def.'s MSJ Mem. 19.  (In fact, the prior request referenced precisely the same *Risk Rating 2.0 Methodology and Data Sources* report, documenting Milliman's work, that, as discussed in the following section, Plaintiffs now rely on to claim that FEMA's search was inadequate.)  Moreover, FEMA's FOIA staff and its actuarial staff— the undisputed experts on Risk Rating 2.0 premiums and the catastrophe modeling used to generate premiums—closely reviewed the agency's previously compiled central repository of Milliman data and confirmed that it contained all applicable risk modeling records.  Under these circumstances, FEMA reasonably used the search it conducted for the prior, similar FOIA request to conduct its search for Plaintiffs' request.  *See, e.g.*, *Rein v. U.S. Pat. & Trademark Off.*, 553 F.3d 353, 363 (4th Cir. 2009) (ruling that agency's "decision to use the searches conducted in response to [prior, similar] requests . . . was not inherently unreasonable and appears to be a practical and common-sense approach" because "[t]he requests sought similar information related to the same subject matter," and a "wholly new and independent search[] . . . would be duplicative and without a discernible benefit"); *Naumes v. Dep't of the Army*, 588 F. Supp. 3d 23, 36 (D.D.C. 2022) ("It is within 'the scope of the [agency's] discretion and expertise in crafting a reasonable search' to decide what records systems to look in 'based on consultation with subject-matter experts.'" (alteration in original) (quoting *Elec. Priv. Info. Ctr. v. FBI*, No. 17-cv-121, 2018 WL 2324084, at *3 (D.D.C. May 22, 2018) (finding search

adequate where, based on consultation with subject matter experts, agency located files with responsive records)); *Gold Anti-Tr. Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 133 (D.D.C. 2011) (finding a search adequate where the agency relied on experts "consulted specifically because of their familiarity" with the subject of the FOIA request to choose the locations searched). Plaintiffs offer no reason to call into question either FEMA's decision not to conduct a wholly independent and duplicative search or its expert judgment regarding risk modeling records. *See Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the court should attempt to micro manage the executive branch.").

*Second*, Plaintiffs wrongly challenge FEMA's search because the agency located only a "single repository" of Milliman records and "concluded that no further search was necessary." Pls.' MSJ Mem. 25. As discussed, Plaintiffs' request required only that FEMA search for Milliman risk modeling data, and FEMA's search located that all that data in a central database. Accordingly, the agency rightly concluded that it did not need to identify any other search locations or conduct any further searches. *See, e.g.*, *Clemente*, 867 F.3d at 118 (same, concluding that "[t]he agency had no obligation to conduct further searches once it found the . . . informant file, the precise records covered by [plaintiff]'s request").

*Third*, Plaintiffs err in arguing that FEMA's search was unreasonable because it resulted only in Milliman risk modeling data and did not result in the identification and production of "other documents or data sets . . . such as claims information . . . , historical loss data . . . , or levee data related to St. Charles Parish." Pls.' MSJ Mem. 25. It is well established that "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). It is likewise well established that the fundamental question is not "whether there might exist

11

any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphases omitted); *see also, e.g.*, Def.'s MSJ Mem. 25–26. Therefore, Plaintiffs "cannot demonstrate that the [agency]'s search was inadequate by listing hypothetical documents that [they] believe[] could and should have been located and released to [them]." *Clemente*, 741 F. Supp. 2d at 79. After all, "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured," and allegedly missing documents alone cannot undermine an agency's search. *Jud. Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003); *see also, e.g.*, *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) (finding agency search is "not unreasonable simply because it fails to produce all relevant material" (quotation marks omitted)); *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) (explaining that "the failure to turn up [a] document does not alone render the search inadequate; there is no requirement that an agency produce all responsive documents" (citing *Perry*, 684 F.2d at 128)); *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (same); *Rodriguez v. U.S. Dep't of Army*, 31 F. Supp. 3d 218, 228 (D.D.C. 2014) (same); *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010) ("The issue is *not* whether other documents may exist, but rather whether the search for undisclosed documents was adequate." (quotation marks omitted)). In any event, levee data, loss data, and claims information are not Milliman risk-modeling data, so these categories of information do not call into question FEMA's search. *See* Ondrich Suppl. Decl. ¶ 10. (More on this data in Part II.C.2 below.)

*Fourth*, Plaintiffs are misguided in accusing FEMA of "tr[ying] to reshape its legal burden by asserting that it has produced all of the materials necessary for the Parish to understand . . . premiums for Risk Rating 2.0" in St. Charles Parish. Pls.' MSJ Mem. 23. Plaintiffs themselves explained in their administrative appeal that "the[ir] request seeks the data that is crucial to the residents of St. Charles Parish and will assist in understanding the risk rating to protect and advance the interest of its citizens." Jewell Decl., Ex. 3 at 2. Even now, Plaintiffs emphasize that their request seeks information

to assist in understanding Risk Rating 2.0 premium setting in the Parish. *See, e.g.*, Pls.' MSJ Mem. 7, 12, 32. All FEMA has done is accommodate Plaintiffs' wishes by explaining, using basic actuarial principles, how the records it produced gave them the risk modeling data necessary to understand Risk Rating 2.0 premiums in St. Charles Parish. *See* Def.'s MSJ Mem. 26. Plaintiffs do not offer any reason to question this helpful explanation that they apparently do not want, nor do they use it in any to undermine the validity of FEMA's adequate search. *Cf. Students Against Genocide v. Dep't of State*, 257 F.3d 828, 839 (D.C. Cir. 2001) ("[T]hat the Department gave [plaintiff] more information than it requested does not undermine the conclusion that its search was reasonable and adequate.").

*Fifth*, and finally, Plaintiffs err in applying the minimal case law they discuss. Plaintiffs claim that FEMA failed to meet its burden under cases like *Porup v. CIA*, 997 F.3d 1224, 1237 (D.C. Cir. 2021), to provide "a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Pls.' MSJ Mem. 23 (emphasis and quotation marks omitted). But FEMA has already provided declarations that robustly describe FEMA's entire search process and aver that all files likely to contain responsive materials, *i.e.*, Milliman risk modeling data, were searched. *See* Def.'s MSJ Mem. 18–19, 25. And Plaintiffs' reliance on *Sea Shepherd Conservation Society v. IRS*, 89 F. Supp. 3d 81 (D.D.C. 2015), likewise fails in light of FEMA's detailed declarations. According to Plaintiffs, *Sea Shepherd* is instructive because the trial court there determined that the agency's affidavits "failed to explain why only limited locations were searched," to state that "no other record system was likely to produce responsive documents," to "describe any other details of the search," or to "indicate that a search was conducted for the broader category of records requested by the plaintiff rather than one subset of records requested." Pls.' MSJ Mem. 23 (quotation marks omitted). But FEMA's declarations are readily distinguishable. Whereas the *Sea Shepherd* declarations were bare—stating simply that two individuals conducted searches in general locations and providing no other details on the searches, "such as the

13

relevant file systems" or why the search locations were chosen, 89 F. Supp. 3d at 93—FEMA's declarations fulsomely explain the who-what-where-when-and-why of FEMA's search process.  *See* Def.'s MSJ Mem. 18–19, 25.

      **C.**    **Plaintiffs Improperly Seek to Expand Their FOIA Request to Cover "Missing" Non-Milliman, Non-Risk Modeling Records that They Only Speculate Exist**

Plaintiffs contend in their final search argument that FEMA's search was inadequate because there are documents that are "known to exist and are responsive to the Parish's request" but have not been produced or identified by the agency.  Pls.' MSJ Mem. 16; *see id.* at 25–28.  This argument is a non-starter for the reasons discussed above: The issue is not whether other documents exist—as an agency's search is not judged by its fruits or by whether it was perfect and produced all relevant material—but is instead whether, as established here, the agency's search methods for Plaintiffs' request were reasonable.  *See supra* at 11–12; *see also e.g.*, *DiBacco v. U.S. Army*, 795 F.3d 178, 190–91 (D.C. Cir. 2015) (explaining that "adequacy—not perfection—is the standard that FOIA sets," and that the argument that an agency's search was inadequate because it failed to turn up certain records was a "losing claim" "put . . . to bed twenty-five years ago and age has not improved it" (citation omitted)). Plaintiffs' argument also fails on its own terms.  Clear case law bars the spare "expert" declaration that Plaintiffs use to argue that certain responsive documents are missing, and Plaintiffs' argument is, any event, pure speculation that ignores the plain language of their FOIA request.

      **1.**    **The Declaration of Plaintiffs' Alleged Expert Is Improper and Does Not Establish that Any Responsive Records Are Missing**

Plaintiffs submit the declaration of Dr. Joseph Suhayda to support their argument that certain missing documents demonstrate that FEMA's search was inadequate.  *See* Decl. of Joseph Suhayda ("Suhayda Decl."), ECF No. 35-9.  Styled as an expert declaration, Dr. Joseph Suhayda's short declaration proffers in conclusory fashion that "there are categories of documents that are known to exist and that would be responsive to the Parish's request but that have not been produced by

FEMA," and it lists six such document categories, without any explanation as to what the records are, why they are known to exist, or why they are responsive.  Suhayda Decl. ¶ 9; *see also, e.g.*,  Pls.' MSJ Mem. 15–16, 26–27.  The Court should not credit Dr. Suhayda's declaration for several interrelated reasons, each of which demonstrates that his views cannot and do not call into question the agency's search methods.

To begin with, Plaintiffs fail to establish that their putative expert satisfies Federal Rule of Evidence 702.  The rule requires that an "expert" is "qualified . . . by knowledge, skill, experience, training, or education," and it permits an expert to offer an opinion only if the proponent demonstrates that the expert, among other things, has "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact in issue" and relies on "sufficient facts or data" and "reliable principles and methods."  Fed. R. Evid. 702. These threshold requirements are not satisfied here.  Dr. Suhayda states that he has a PhD in physical oceanography and is a coastal hydrologist "with over 30 years in coastal physical process, coastal engineering, marine geotechnics, hurricane flooding, and oceanographic design criteria," Suhayda Decl. ¶ 3; *see* Pls.' MSJ Mem. 15, but nowhere does he or Plaintiffs explain how his general background qualifies him to opine on FEMA's records for premium calculations under Risk Rating 2.0.  (In fact, neither Dr. Suhayda nor Plaintiffs establish the necessary precursors for him to even opine on Risk Rating 2.0 records at all; they provide zero information on his expertise on flood insurance and the NFIP, Risk Rating 2.0 and how it functions, and FEMA's recordkeeping and recordkeeping systems for the rating methodology.)   All Dr. Suhayda does is offer a two-sentence overview of his professional background and state that he reviewed public FEMA documents (*i.e.*, its *Risk Rating 2.0 Methodology and Data Sources* report) and productions in this case, without any substantiation of his expertise to evaluate these documents and reach a conclusion as to what documents "the Parish could have been expected to be produced and that should have been produced."  Suhayda Decl. ¶ 4; *see* Pls.'

MSJ Mem. 15. That cursory explanation is plainly insufficient for Plaintiffs to satisfy their burden under Rule 702. *See, e.g.*, *Hall v. CIA*, 538 F. Supp. 2d 64, 72–73 (D.D.C. 2008) (declining to rely on purported expert's declaration regarding FOIA search where it offered statements that were conclusory, lacked foundation, and thus could not be considered helpful or reliable); *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529–30 (5th Cir. 2015) (affirming exclusion of expert testimony where expert testimony was conclusory and expert lacked relevant knowledge and experience on issue); *Fulmer v. United States*, No. CV 17-15943, 2019 WL 1989233, at *6 (E.D. La. May 6, 2019) (similar), *aff'd*, 785 F. App'x 258 (5th Cir. 2019).[6]

Furthermore, Dr. Suhayda's declaration is improper because the fulsomeness of an agency's FOIA search is not a proper topic for an outside expert's testimony at summary judgment. Courts consider the adequacy of agencies' searches based on agency declarations, which are akin to the agencies' administrative record. Such declarations are entitled to a presumption of good faith and warrant summary judgment where, as here, they provide a reasonably detailed explanation for the search. *See, e.g.*, *Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir. 1986); *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); Def.'s MSJ Mem. 17–19. Any declarations that FOIA plaintiffs submit are entitled to no such weight or role in the summary judgment analysis. And here, Dr. Suhayda's declaration is "at most an opinion that [FEMA] did not conduct an adequate search" because he believes that certain documents are missing, yet "he has no personal knowledge" of the events underlying the search or the "missing" documents. *Hall*, 538 F. Supp. 2d at 72; *see also id.* at 67–68 (relying on Fed. R. Civ. P. 56(e)). On this basis, courts often completely disregard the declarations of

---

[6] Judges in the District routinely decline to consider expert testimony where the experts' qualifications and bases for their conclusions are, like here, addressed only in conclusory fashion. *See, e.g.*, *Jumonville v. Progressive Sec. Ins. Co.*, No. CV 22-3751, 2024 WL 3044653, at *2 (E.D. La. June 18, 2024); *MGMTL, LLC v. Strategic Tech.*, No. CV 20-2138-WBV-MBN, 2022 WL 485279, at *11 (E.D. La. Feb. 17, 2022); *Shawler v. Ergon Asphalt & Emulsions, Inc.*, No. 15-2599, 2016 WL 1019121, at *12 (E.D. La. Mar. 15, 2016), *aff'd sub nom. Shawler v. Big Valley, LLC*, 728 F. App'x 391 (5th Cir. 2018).

FOIA plaintiffs' outside experts and other individuals.  *See, e.g.*, *id.* at 67–73; *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 337 F. Supp. 2d 146, 160 (D.D.C. 2004); *Broemer v. Tenet*, No. CV 01-04340 MMM (RZX), 2008 WL 11411412, at *8 (C.D. Cal. Apr. 14, 2008).  The Court should do the same here.

Moreover, Dr. Suhayda's analysis is irrelevant because it appears to proceed, as many of Plaintiffs' arguments do, from the faulty starting point that Plaintiffs' FOIA request sought any and all Risk Rating 2.0 data specific to St. Charles Parish.  *See* Suhayda Decl. ¶¶ 6, 8 (explaining his focus on "the existence of data and information that would be highly valuable to the elected officials in St. Charles Parish" and critiquing FEMA for not providing any data "concerning calculating insurance premiums in St. Charles Parish").[7]  As already discussed, Plaintiffs' request did not extend this broadly; it instead sought Milliman risk modeling data.  *See supra* at 5–9.  None of the examples of "missing" record categories that Dr. Suhayda identifies fall within this request scope, so his opinion on them fails to show that FEMA's search was inadequate.  *Cf. Am. Small Bus. League*, 631 F. Supp. 3d at 822 (similar).  By Plaintiffs' own characterization, these records represent FEMA "inputs" into the risk modeling analysis and premium calculation process, not Milliman risk modeling data itself.  Pls.' MSJ Mem. 15–16.  (More on this data in Part II.C.2 below.)

And regardless of all these deficiencies, Dr. Suhayda's declaration ultimately does not create a genuine dispute of material fact, because it fails to cast any doubt on FEMA's robust declarations describing the agency's search.  On one side of the ledger are his conclusory statements that certain documents are missing from FEMA's search and production, which are not backed up by any personal knowledge as to the agency's Risk Rating 2.0 recordkeeping or search efforts.  On the other

---

[7] Contrary to Dr. Suhayda's claim, FEMA's production does contain information necessary to understand premium calculations in St. Charles Parish and other localities.  *See* Def.'s MSJ Mem. 26; Ondrich Decl. ¶¶ 15–19 (providing explanation, using basic actuarial principles and with reference to particular records, how to get down to local-level premiums).  He fails to address FEMA's explanation.

side of the ledger are the Hines and Ondrich declarations, robustly laying out all the steps FEMA took to locate over 13,000 pages of responsive records. That lopsided weight of evidence fully negates the possibility that the Suhayda declaration entitles Plaintiffs to prevail at summary judgment. *See Jud. Watch*, 337 F. Supp. 2d at 161 (concluding that plaintiff's attempt to discredit search with its own declaration was "insufficient to overcome the personal knowledge-based" declarations submitted by agency); *Broemer v. FBI*, No. CV 08-05515 MMM (RZX), 2011 WL 13142587, at *10–11 (C.D. Cal. Apr. 22, 2011) (similar), 548 F. App'x 435 (9th Cir. 2013); *Long v. Immigr. & Customs Enf't*, 149 F. Supp. 3d 39, 57–58 (D.D.C. 2015) (concluding that agency was entitled to summary judgment on FOIA search where plaintiff's expert lacked specific knowledge about agency's electronic database and agency's declarant offered database analysis that was based on specific knowledge and entitled to substantial weight).

### 2.    Plaintiffs Fail to Establish that Any Responsive Records Are Missing

Perhaps realizing that Dr. Suhayda's declaration is on shaky ground, Plaintiffs parrot his argument from their own perspective. Plaintiffs contend that "FEMA's own documents"—"namely" its *Risk Rating 2.0 Methodology and Data Sources* report and "other publicly available information"— reveal that "numerous data sets and documents are available and responsive to the Parish's request" but were improperly omitted from FEMA's search and production. Pls.' MSJ Mem. 25. Plaintiffs in effect double down on Dr. Suhayda's list of allegedly missing materials. *Id.* at 26 (likewise identifying, as Dr. Suhayda does, allegedly missing map, levee, and historical loss and claims data). But as established in the Ondrich declaration and reinforced in the supplemental Ondrich declaration submitted with this brief,[8] none of the allegedly missing materials have any relevance in this case.

---

[8] Courts often rely on supplemental declarations that agencies submit with their FOIA opposition and reply briefs to respond to issues raised by plaintiffs' summary judgment submissions. *See, e.g., Leopold v. Dep't of Just.*, 130 F. Supp. 3d 32, 41–42 (D.D.C. 2015), *on reconsideration in part*, No. 14-CV-

None of the materials identified are responsive to Plaintiffs' request for Milliman risk modeling data—Plaintiffs themselves characterize all the missing categories of materials as FEMA underlying data that fed into the Milliman risk modeling analysis, not Milliman data or risk modeling data itself, *see id.* at 25–26—and many of them do not, in the forms articulated by Plaintiffs and Dr. Suhayda, even exist. Plaintiffs' suggestions otherwise are "mere speculation." *Wilbur*, 355 F.3d at 678 ("[M]ere speculation that as yet uncovered documents might exist . . . does not undermine the determination that the agency conducted an adequate search for the requested records.").

The following table summarizes the nonresponsive and nonexistent nature of the six categories of "missing" materials, *see* Ondrich Suppl. Decl. ¶¶ 8–18:

| Category of "Missing Record" | Does the Record Exist, and Is it Responsive to Plaintiffs' Request? |
|---|---|
| Premium Calculation Worksheet Input Data for each Parish property | This does not exist. There are no premium calculation worksheets, and corresponding data records, for individual properties.<br><br>Moreover, individual policyholder "input" data such as geographical and structural characteristics are not Milliman data or risk modeling data, *i.e.*, what results from the application of software and algorithms to various inputs to generate outputs that insurance industry professionals utilize for ratemaking. The *Risk Rating 2.0 Methodology and Data Sources* report makes this clear by separately discussing catastrophe modeling and other data. |
| Premium Calculation Worksheet Output Data for each Parish property | This does not exist. There are no premium calculation worksheets, and corresponding data records, for individual properties. |
| Historic Flood Claims Data Specific to the Parish | Although this does exist, it is not risk modeling data for the reasons described above. |

---

00168 (APM), 2016 WL 7839130 (D.D.C. Apr. 25, 2016); *Stein v. CIA*, 454 F. Supp. 3d 1, 17 (D.D.C. 2020); *Vest v. Dep't of Air Force*, 793 F. Supp. 2d 103, 121 (D.D.C. 2011); *Gahagan v. U.S. Citizenship & Immigr. Servs.*, 147 F. Supp. 3d 613, 620, 623 (E.D. La. 2015). As with her initial declaration, the supplemental Ondrich declaration is entitled to a presumption of good faith.

| Map of Risk Rating 2.0 premium estimates for the Parish, previously available on FEMA READYOURRISK.COM | This is not a FEMA record that exists.  The website identified does not belong to FEMA, and FEMA has never made a map of premium estimates for the Parish<br><br>Moreover, a map is not risk modeling data for the reasons described above. |
|---|---|
| Redacted copies of all technical reports and communications by any consultants who completed modeling[9] | Although this does exist, technical reports and communications related to modeling do not represent modeling data; rather, they are user documentation about the models.<br><br>Moreover, the third-party documentation is all proprietary and thus falls under Exemption 4, and the one FEMA documentation identified is unfinished and thus falls under Exemption 5. |
| Any documentation confirming the list of levees in the Parish considered as part of Risk Rating 2.0 and reasons for exclusion of any levees | This is not a FEMA record that exists.  FEMA does not maintain its own list of levees.  It relies on the National Levee Database, which is developed and maintained by the U.S. Army Corps of Engineers, to include all known and available levee data in Risk Rating 2.0.  FEMA does not make any decisions regarding what levees to include or not include in the database, and it does not exclude from Risk Rating 2.0 any levees from the database.<br><br>Moreover, levee data is not risk modeling data for the reasons discussed above. |

In short, there is no genuine dispute of material fact that the allegedly "missing" records—which, as a threshold matter, are not even legally relevant to assessing the reasonableness of the agency's search methods, *see supra* at 11–12—do not exist and/or are not responsive to Plaintiffs' request.

Both circumstances foreclose Plaintiffs' "missing" records argument.  Agencies are required only to conduct searches reasonably calculated to locate *responsive* records that the agency *already* has in its possession.  *See, e.g.*, *Batton*, 598 F.3d at 176 (agency entitled to summary judgment where it demonstrated that it "performed a search reasonably calculated to yield responsive documents"); *Porup*, 997 F.3d at 1237 (same); *Yeager*, 678 F.2d at 321 ("A requester is entitled only to records that

---

[9] Plaintiffs and Dr. Suhayda list the following as examples of model reports and documentation: Atkins, Mapping Integration Model Documentation Version 2.0 (February 13, 2020), KatRisk Data and Technical Documentation (February 2018), AIR Inland Flood Model for the United States (June 2016); AIR Hurricane Model for the United States (June 2017); and RQE v. 18.0 US Flood Model Principles and Methodology (June 2018).  Note that AIR is Verisk.  *See* Decl. of Roger Grenier, PhD ¶ 1, ECF No. 31-6.

an agency has in fact chosen to create and retain.").  FOIA litigants thus cannot, as Plaintiffs seek to do here, undermine agencies' good-faith search explanations by pointing to records that are nonresponsive or do not exist.  *See, e.g.*, *In re Clinton*, 970 F.3d 357, 367–68 (D.C. Cir. 2020) (explaining that nonresponsive records did not call into question the adequacy of the agency's search), *on reh'g*, 973 F.3d 106 (D.C. Cir. 2020); *Landmark Legal Found. v. Dep't of Just.*, 211 F. Supp. 3d 311, 318 (D.D.C. 2016) (rejecting plaintiff's attempt to rely on allegedly missing list of employees that agency did not have as a ready-made record, because FOIA entitles requesters only to records that an "[agency] already has" and "does not require [an agency] to create" new records (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161–62 (1975), and *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 271 (D.D.C. 2012))); *Piper v. U.S. Dep't of Just.*, 294 F. Supp. 2d 16, 23–24 (D.D.C. 2003) (granting summary judgment to agency because its affidavit explained that apparently "missing" records did not exist, "no material issue [existed] to rebut the Government's good faith presumption in the processing of this FOIA request," and no reason existed to "consider speculative, second hand accounts of other possible records that the [agency] may or may not have"), *amended*, 428 F. Supp. 2d 1 (D.D.C. 2006), *aff'd*, 222 F. App'x 1 (D.C. Cir. 2007).

In any event, Plaintiffs belated identification of more specific categories of records that they have apparently wanted all along is beside the point. "[T]he FOIA requester is the master of the FOIA request," and when a requester omits particular sought-after items in their request and then elects to sue to obtain them, that "failure . . . is on the plaintiff, not the agency."  *Energy Pol'y Advocs. v. Sec. & Exch. Comm'n*, 699 F. Supp. 3d 56, 63 (D.D.C. 2023) (quotation marks omitted).  Here, Plaintiffs got exactly what they requested—Milliman risk modeling data used to calculate premiums in St. Charles Parish (and elsewhere).  If Plaintiffs wanted additional records, they could have easily requested those documents in the first instance or provided these documents as examples when FEMA asked them multiple times for clarity regarding their request.  They did not, and that failure lies with them.

### III.    Plaintiffs' Attorney Fees and Costs Arguments Are Premature

As part of their summary judgment submission, Plaintiffs incorporate a request that the Court grant them attorney fees and costs under FOIA's fee-shifting provision, 5 U.S.C. § 552(a)(4)(E)(i).  *See* Pls.' MSJ Mem. 1, 28–32.  Plaintiffs' request is premature.  Section 552(a)(4)(E)(i) establishes that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has *substantially prevailed*." 5 U.S.C. § 552(a)(4)(E)(i) (emphasis added).  But the merits of the case—and thus prevailing party status—have yet to be resolved.  Summary judgment briefing is ongoing, so the Court has not yet entered final judgment.

By raising arguments for fees and costs before final judgment—amidst summary judgment briefing—Plaintiffs depart from basic fees-and-costs motions practice.  In the normal course of events, in a FOIA case or otherwise, a prevailing party moves for fees and costs *after* the Court enters judgment. *See, e.g., Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008) ("After the agency filed a superseding motion for summary judgment [in a FOIA case], the district court granted the agency's motion. [The plaintiff] thereafter timely filed a motion for attorney's fees under 5 U.S.C. § 552(a)(4)(E) . . . ."); *N.Y.C. Apparel F.Z.E. v. U.S. Customs & Border Prot. Bureau*, 563 F. Supp. 2d 217, 219–20 (D.D.C. 2008) (describing FOIA plaintiff's motion for attorney's fees filed after the court ruled on summary judgment).  Indeed, the Federal Rules contemplate fee litigation following judgment on the merits. *See* Fed. R. Civ. P. 54(d)(2)(B)(ii) (requiring a motion for  fees "specify the judgment . . . entitling the movant to the award").  Accordingly, courts repeatedly conclude that a request for attorney fees and costs under FOIA, when made at the merits stage, is "premature." *Elec. Priv. Info. Ctr. (EPIC) v. Dep't of Homeland Sec.*, 760 F. Supp. 2d 4, 9 n.5 (D.D.C. 2011) (relying on *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 37 n.18 (D.C. Cir. 1998), which it explained "observ[ed] that the district court's discussion of attorney's fees had been premature where summary judgment had not yet been resolved," and *Wheeler*

*v. Exec. Off. of U.S. Att'ys*, CV 05-1133 (CKK), 2008 WL 178451, at *7 (D.D.C. Jan. 17, 2008), which it explained had "order[ed] further briefing on the issue of attorneys fees upon concluding that resolution of the issue was premature at summary judgment stage"); *Coven v. OPM*, No. 07-1831, 2009 WL 3174423, at *20 (D. Ariz. Sept. 29, 2009) (deciding that motion for costs was premature when final judgment not yet entered); *see also, e.g.*, *Quick v. U.S. Dep't. of Comm., Nat'l Inst. of Standards & Tech.*, 775 F. Supp. 2d 174, 183 (D.D.C. 2011); *Hussain v. U.S. Dep't of Homeland Sec.*, 674 F. Supp. 2d 260, 272–73 (D.D.C. 2009); *Mich. Immigrant Rights Ctr. v. Dep't of Homeland Sec.*, No. 16-14192, 2020 WL 91539, at *3 (E.D. Mich. Jan. 8, 2020).

Accordingly, interim fee-and-cost awards like the one Plaintiffs apparently seek are exceedingly rare, and FOIA litigants must meet a very high burden of proof to receive them. Courts explain that "an interim award of fees should be dissuaded in all but the most exceptional cases involving protracted litigation and financial hardship." *Mich. Immigrant Rights Ctr.*, 2020 WL 91539, at *2; *see also, e.g.*, *Allen v. FBI*, 716 F. Supp. 667, 672 (D.D.C. 1988) ("Interim awards, if allowed, must be granted sparingly, and only in those instances where great hardship is alleged."); *Fleming v. Medicare Freedom of Info. Grp.*, 310 F. Supp. 3d 50, 54 (D.D.C. 2018) (same). Interim awards are a rarity because "[a] final award on one motion at the conclusion of the action would more efficiently decide the question than periodic interim decisions" and piecemeal, potentially duplicative consideration of the question. *Allen*, 716 F. Supp. at 672 (quotation marks omitted); *see also, e.g.*, *Biberman v. FBI*, 496 F. Supp. 263, 265 (S.D.N.Y. 1980) (noting "inefficiency" of interim fee award). And they are a rarity because they deprive the Court and the parties of the ability "to consider more comprehensively— against the backdrop of the entire litigation" and the Court's final resolution of the case on summary judgment—"the significance of the ultimate relief obtained by Plaintiffs." *Mich. Immigrant Rts. Ctr.*, 2020 WL 91539, at *3.

23

Plaintiffs do not identify any reason to depart from ordinary fee-and-cost motions practice and take the rare step of litigating fees and costs before, rather than after, resolution of the merits and entry of judgment. They fail to meet their burden of demonstrating a compelling hardship, as they have "not articulated *any need* for" an interim award. *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 187 (D.D.C. 2011) (emphasis added); *see also, e.g.*, *Hussain*, 674 F. Supp. 2d at 273 (same). In fact, Plaintiffs at this juncture do not even seek an actual fee award. They instead seek a determination, by way of summary judgment briefing, that they are eligible for and entitled to a fees-and-cost award, which could only issue after a motion for fees and costs that they say would be forthcoming. *See* Pls.' MSJ Mem. 32. Plaintiffs fail to recognize that their request lacks any legal or factual support.[10]

None of Plaintiffs' fee-and-cost arguments save their premature and unsupported request. Neither of Plaintiffs' alleged bases for award eligibility justifies prematurely litigating the issue before resolution of the merits and final judgment. Plaintiffs first claim that they will be eligible for fees and costs "*if* the Court issues an order granting the Parish's requested relief" on the merits of their claim that FEMA's FOIA search was unreasonable. Pls.' MSJ Mem. 28–29 (emphasis added). But the Court has not issued such an order or entered judgment, making their fees-and-costs request unripe. *See, e.g.*, *EPIC*, 760 F. Supp. 2d at 9 n.5; *Coven*, 2009 WL 3174423, at *20. Plaintiffs also claim that they are eligible for fees and costs because "it took the filing of this lawsuit to get FEMA to produce any documents." Pls.' MSJ Mem. 29. Yet courts faced with this exact argument have easily concluded that a pre-judgment award is premature. *See, e.g.*, *Quick*, 775 F. Supp. 2d at 183; *Hussain*, 674 F. Supp.

---

[10] Any belated attempts by Plaintiffs to meet their burden of justifying interim fees-and-cost litigation and an interim award would necessarily fail. Plaintiffs have never identified a great financial hardship that would, absent an interim award, prevent them from "continu[ing] the litigation." *Clemente*, 867 F.3d at 121; *Fleming*, 310 F. Supp. 3d at 54 (similar). And this case has not been "unusually" "protracted," such that the "availability of a final award of attorney fees would be like the end of a rainbow, unattainable." *Allen*, 716 F. Supp. at 671. This case has only been pending for a little more than a year and is nearing its end. *Cf. Fleming*, 310 F. Supp. 3d at 54 (denying interim award where case had been pending for five years and where case "might well be resolved in relatively short order").

2d at 272.  Plaintiffs' arguments regarding their entitlement to fees and costs fare no better.  They too do not provide any reason why the Court should prematurely consider "the public benefit derived from the case" and other related entitlement questions, Pls.' MSJ Mem. 29 (quotation marks omitted), rather than waiting until the merits are fully resolved and the Court and the parties can consider the full scope of the litigation, *see Mich. Immigrant Rts. Ctr.*, 2020 WL 91539, at *3.

FEMA therefore respectfully requests that the Court deny Plaintiffs' fee-and-cost request as premature.  FEMA further respectfully requests that the Court give the parties the opportunity to negotiate any fee-and-cost issues after final judgment—as parties often do—before allowing the parties to submit for its consideration a proposed briefing schedule on fees and costs should they be unable to reach any agreement.

## CONCLUSION

For the foregoing reasons, the Court should grant FEMA's motion for summary judgment and deny Plaintiffs' motion for summary judgment.

Dated:  August 5, 2024   Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Yoseph T. Desta*
YOSEPH T. DESTA (CA Bar No. 332179)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Phone: 202-305-3080
Email:  Yoseph.T.Desta@usdoj.gov

*Counsel for Defendant*