UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ST. CHARLES PARISH, A POLITICAL SUBDIVISION OF THE STATE OF LOUISIANA, AND MATTHEW JEWELL, IN HIS OFFICIAL CAPACITY AS ST. CHARLES PARISH PRESIDENT,<br><br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY,<br><br>*Defendant*. | Civil Action No. 2:23-cv-01369<br><br>Section P<br><br>Judge Papillion<br><br>Magistrate Judge North |

**DEFENDANT'S RESPONSE TO
PLAINTIFFS' STATEMENT OF UNCONTESTED FACTS**

Pursuant to LR 56.2, Defendant Federal Emergency Management Agency ("FEMA") hereby submits the following response to Plaintiffs' Statement of Uncontested Facts, ECF No. 35-10.

Defendant is not required to respond to the statements in paragraphs 1–5, 16, and 47 of Plaintiffs' Statement of Uncontested Facts because the alleged facts, regardless of whether they are true, are not material to the resolution of Plaintiffs' Cross-Motion for Summary Judgment in this Freedom of Information Act ("FOIA") case. "Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see* Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action"). None of the purported facts in these paragraphs has any bearing on the outcome of this FOIA suit under applicable law. Since parties must identify genuine issues only with respect to "material" facts, Fed. R. Civ. P. 56(c); *see* LR 56.1, Defendant is not required to respond to those paragraphs.

1. Since the implementation of FEMA's Risk Rating 2.0, a St. Charles Parish property owner has experienced on average over a 230% premium increase for flood insurance in the NFIP.[1]

   **Defendant's Response**: This paragraph does not state material facts, and Defendant therefore is not required to respond. To the extent a response is deemed required, Defendant denies. Premium increases for most NFIP policies are capped at 18% annually by law, and for certain repetitive loss properties is capped at 25% annually. *See* 42 U.S.C. §§ 4014(a)(2)(B), 4015(e).

2. In some instances, NFIP premiums have even exceeded a 700% increase for a St. Charles Parish homeowner.[2]

   **Defendant's Response**: This paragraph does not state material facts, and Defendant therefore is not required to respond. To the extent a response is deemed required, Defendant denies. Premium increases for most NFIP policies are capped at 18% annually by law, and for certain repetitive loss properties is capped at 25% annually. *See* 42 U.S.C. §§ 4014(a)(2)(B), 4015(e).

3. The Parish has felt this impact directly, as insurance premiums on many Parish-owned properties have sharply increased causing budgetary constraints on the Parish.[3]

   **Defendant's Response**: This paragraph does not state material facts, and Defendant therefore is not required to respond. To the extent a response is deemed required, Defendant denies this statement for lack of knowledge or information sufficient information to form a belief about the truth of the statement.

4. In addition, since flood insurance is a mandatory requirement by lenders for most, if not all, single family property owners who have a mortgage, this issue presents an immediate and urgent concern to the Parish leadership and their constituents.[4]

   **Defendant's Response**: This paragraph does not state material facts, and Defendant therefore is not required to respond. To the extent a response is deemed required, Defendant denies this statement for lack of knowledge or information sufficient information to form a belief about the truth of the statement.

---

[1] Exhibit D [to Pls.' Mem. in Supp, of Cross-Mot. for Summ. J. and Incorporated Opp. to FEMA's Mot. for Summ. J., ECF No. 35-1], Declaration of Matthew Jewell ("Jewell Decl.") ¶ 9.
[2] Jewell Decl. ¶ 10.
[3] *Id.* ¶ 8.
[4] Jewell Decl. ¶ 11.

5.     The Parish desired to obtain data from FEMA to assist in making policy decisions and informing its citizens of ways to positively impact the negative effects of the flood insurance premium crisis.[5]

**Defendant's Response**:  This paragraph does not state material facts, and Defendant therefore is not required to respond.  To the extent a response is deemed required, Defendant denies this statement for lack of knowledge or information sufficient information to form a belief about the truth of the statement.

6.     On November 3, 2022, the Parish submitted a straightforward FOIA request to FEMA: "Please provide all data including but not limited to modeling data used to calculate NFIP flood insurance premiums in St. Charles Parish, Louisiana, in Risk Rating 2.0."[6]

**Defendant's Response**:  Defendant admits that the Parish submitted the quoted FOIA request on November 3, 2022 but otherwise the characterization of the request as "straightforward." Defendant refers the Court to the request language for a full and accurate statement of its contents.

7.     On November 23, 2022, FEMA sought clarity in connection with the request to "help the search tasker in finding records."[7]

**Defendant's Response**:  Defendant admits and respectfully refers the Court to the cited communication for a full and accurate statement of its contents.

8.     That same day, the Parish responded and provided the requested clarity, explaining: "The NFIP uses risk modeling to determine how much premium to charge participants who participate in the flood insurance program. I am requesting the risk model used to assign premiums to St. Charles Parish residents. I believe Milliman was the company that did the modeling for FEMA. Does this help narrow the request?"[8]

**Defendant's Response**:  Defendant admits that the Parish responded with the quoted response and respectfully refers the Court to the cited communication for a full and accurate statement of its contents.

---

[5] *Id.* ¶¶ 19-20.
[6] *Id.* ¶ 21.
[7] *Id.* ¶ 22 and Ex. 1, at 2-3.
[8] Jewell Decl. ¶ 23 and Ex. 1, at 2.

3

9. FEMA informed the Parish that it would request additional information if needed.[9]

**Defendant's Response**: Defendant admits and respectfully refers the Court to the cited communication for a full and accurate statement of its contents.

10. FEMA conducted its first search for documents on November 25, 2022, and ended its search on January 6, 2023.[10]

**Defendant's Response**: Defendant admits and respectfully refers the Court to the cited paragraph of the Declaration of Tammi Hines (ECF No. 31-2, "Hines Declaration") as well as paragraphs 17–20 and for a full and accurate statement of FEMA's search between November 25, 2022, and January 6, 2023.

11. On January 27, 2023, FEMA issued a "standardized" Final Response informing the Parish that it would not release the requested records because the information was confidential and considered trade secrets pursuant to Exemption 4 under 5 U.S.C. § 552.[11]

**Defendant's Response**: Defendant admits that it interpreted Plaintiffs' request as seeking proprietary geospatial data and that it issued Plaintiffs the standardized Exemption 4 response that it had developed for such requests, and it respectfully refers the Court to paragraphs 20–21 of the Hines Declaration for a full and accurate statement of FEMA's response.

12. Because FEMA had received other FOIA requests from other individuals for trade secret data related to NFIP, it interpreted the Parish's request in the same manner and used that same standardized response.[12]

**Defendant's Response**: Defendant admits that it interpreted Plaintiffs' request as seeking proprietary geospatial data and that it issued Plaintiffs the standardized Exemption 4 response that it had developed for such requests, and it respectfully refers the Court to paragraphs 20–21 of the Hines Declaration for a full and accurate statement of FEMA's response.

---

[9] Jewell Decl. ¶ 24 and Ex. 1, at 2.
[10] R. Doc. 31-2 ¶ 16.
[11] Jewell Decl. ¶ 25 and Ex. 2; R. Doc. 31-2 ¶ 21.
[12] R. Doc. 31-1, at 9; R. Doc. 31-2 ¶ 21.

13. The Final Response did not provide any information regarding whether FEMA had conducted a search, whether responsive documents had been located, and what documents, if any, were withheld pursuant to Exemption 4.[13]

**Defendant's Response**: Defendant denies, and it respectfully refers the Court to the cited exhibit, FEMA's final response letter, for a full and accurate statement of FEMA's response. The letter states that "[a] search was conducted by The Federal Insurance and Mitigation Administration for documents responsive to your request. The search resulted in no records being released, pursuant to Title 5 U.S.C. § 552: under FOIA Exemption '(b)(4).'" Jewell Decl., Ex. 2 at 1. The response justified the Exemption 4 withholding as follows: "The Risk Rating Engine was designed using privately held data that the US government purchased through contracting. Forcing the government through FOIA to reveal the proprietary data of the third party would breach exemption 4 of the Freedom of Information Act which protects trade secrets and commercial financial information. The modeling information is very valuable and the company that produced it would be at a significant loss if it were to be made public."

14. The Parish submitted a timely administrative appeal of FEMA's Final Response on February 27, 2023.[14]

**Defendant's Response**: Admitted that Plaintiffs submitted an administrative appeal on February 27, 2023. Otherwise, this paragraph calls for a legal conclusion, to which no response is required.

15. In its appeal letter, the Parish made clear that its FOIA request was not seeking third party proprietary data or any type of algorithm FEMA used to calculate the premiums in Risk Rating 2.0, but rather it sought data "crucial to the residents of St. Charles Parish."[15]

**Defendant's Response**: Defendant admits that the statements in this paragraph are contained in Plaintiffs' appeal letter, and it respectfully refers the Court to the appeal letter for a full and accurate statement of its contents.

16. The Parish further noted that due to the vagueness of the Final Response, it was impossible to understand FEMA's position on the exempted documents because the Final Response

---

[13] Jewell Decl. ¶ 26 and Ex. 2.
[14] Jewell Decl. ¶ 27 and Ex. 3.
[15] Jewell Ex. 3, at 2.

5

did not describe the documents reviewed or located or how it determined the documents were trade secrets.[16]

**Defendant's Response**: This paragraph does not state material facts, and Defendant therefore is not required to respond. To the extent a response is deemed required, Defendant admits that the statements in this paragraph are contained in Plaintiffs' appeal letter, and it respectfully refers the Court to the appeal letter for a full and accurate statement of its contents.

17. FEMA, "prompted by Plaintiffs' administrative appeal," began a second search for records on March 8, 2023.[17]

**Defendant's Response**: Admitted.

18. On March 16, 2023, FEMA again requested clarity with regard to the request, asking for examples of the data that the Parish was requesting.[18]

**Defendant's Response**: Defendant admits and respectfully refers the Court to the cited exhibit and to paragraphs 26–27 of the Hines Declaration for a full and accurate statement of Defendant's action.

19. The Parish, in an effort to cooperate and communicate with FEMA, responded on March 23, 2023, noting that its request for clarity was almost identical to its prior correspondence and also noting that the Parish could not identify for FEMA what data FEMA itself possessed, hence the reason for the request.[19]

**Defendant's Response**: Defendant admits the Parish's March 23, 2023, response and respectfully refers the Court to the cited exhibit for a full and accurate statement of the response. Defendant otherwise lack knowledge or information sufficient information to form a belief about the truth of the statement regarding the Parish's intentions.

20. FEMA concluded its second search on April 3, 2023.[20]

**Defendant's Response**: Admitted.

---

[16] *Id.* at 3.
[17] R. Doc. 31-2 ¶ 16.
[18] Jewell Decl. ¶ 28 and Ex. 4.
[19] Jewell Decl. ¶ 29 and Ex. 5.
[20] R. Doc. 31-2 ¶ 16.

6

21. On April 14, 2023, a representative of FEMA informed the Parish that a second search had been conducted, the Disclosure Branch was awaiting transfer of the records, and it anticipated receiving the records "soon."[21]

**Defendant's Response**: Defendant admits and respectfully refers the Cour to the cited exhibit for a full and accurate of FEMA's communication.

22. Having constructively exhausted its administrative remedies and left with no other recourse, the Parish initiated this lawsuit on April 25, 2023.[22]

**Defendant's Response**: Defendant admits that the Parish initiated suit on April 25, 2023. Otherwise, this paragraph calls for a legal conclusion, to which no response is required.

23. On August 11, 2023, the Parish served written discovery requests to FEMA related to the scope of FEMA's search and its application of Exemption 4.[23]

**Defendant's Response**: Defendant admits and respectfully refers the Court to the cited exhibit for a full and accurate statement of its contents.

24. FEMA objected to the discovery requests and, on August 22, 2023, filed a motion for protective order to resist the inquiries of any discovery for any purpose at all.[24]

**Defendant's Response**: Defendant admits and respectfully refers the Court to the cited motion for a full and accurate statement of its contents.

25. In its memorandum in support of the motion for protective order, FEMA admitted that it "ha[d] not yet completed its processing of records."[25]

**Defendant's Response**: Defendant admits and respectfully refers the Court to the cited motion for a full and accurate statement of its contents.

---

[21] Jewell Decl. ¶ 30 and Ex. 6.
[22] R. Doc. 1.
[23] Exhibit F, Plaintiffs' Interrogatories and Requests for Production to FEMA, August 11, 2023.
[24] R. Doc. 12.
[25] R. Doc. 12-1, at 7.

26. Judge North denied FEMA's motion in part and ordered FEMA to respond to the Parish's discovery requests that would explain how FEMA conducted its search.[26]

**Defendant's Response**: Defendant admits and respectfully refers the Court to the cited order for a full and accurate statement of its contents.

27. Judge North noted that "[t]hese facts – most notably FEMA's blanket invocation of confidentiality over documents that appear, at least to some extent, to be publicly available (rec. doc. 16-7) – call into question the adequacy of FEMA's search for documents and whether it has responded in good faith."[27]

**Defendant's Response**: Defendant admits and respectfully refers the Court to the cited order for a full and accurate statement of its contents.

28. FEMA answered the discovery responses on September 20, 2023, wherein it noted that after its "second" search, FEMA discovered 12,904 pages of potentially responsive documents.[28]

**Defendant's Response**: Defendant admits and respectfully refers the Court to the cited exhibit for a full and accurate statement of its contents.

29. FEMA began producing the documents to the Parish on September 23, 2023 and concluded its production on March 12, 2024.[29]

**Defendant's Response**: Admitted.

30. FEMA did not conduct a search for records responsive to the Parish's request on November 25, 2023.[30]

**Defendant's Response**: Defendant admits that it did not conduct a search on November 25, 2023. Defendant respectfully refers the Court to paragraphs 17–20 of the Hines Declaration, which explains the search FEMA undertook beginning on November 25, 2022. Defendant also respectfully refers the Court to paragraph 10 of Plaintiffs' own statement of material facts, stating that FEMA conducted a search on November 25, 2022.

---

[26] R. Doc. 21.
[27] *Id.* at 2 (emphasis added).
[28] Exhibit G, FEMA's September 20, 2023 Responses to Plaintiffs' Interrogatories and Requests for Production of Documents.
[29] *See* R. Doc. 31-2 ¶ 40.
[30] *Id.* ¶ 20.

31. FEMA's justification for not conducting a search at all is because it "interpreted Plaintiffs' request for 'all data . . . used to calculate' NFIP premiums in St. Charles Parish as an indirect way of seeking the trade-secret geospatial information that feeds into the rating engine for Risk Rating 2.0 . . . ."[31]

**Defendant's Response**: Defendant denies that did not initially conduct a search "at all," and it respectfully refers the Court to paragraphs 17–20 of the Hines Declaration, which explains the search FEMA undertook beginning on November 25, 2022. Otherwise, Defendant admits that the paragraph explains FEMA's initial interpretation of Plaintiffs' FOIA request, and it respectfully refers the Court to the quoted portion of the Hines Declaration for a full and accurate statement of FEMA's interpretation.

32. In FEMA's January 27, 2023 Final Response to the Parish, FEMA did not produce responsive records but merely referred the Parish to OpenFEMA, a general online database of information not specific to Risk Rating 2.0 or insurance premiums but that contains information from FEMA's various programs.[32]

**Defendant's Response**: Defendant admits that its January 27, 2023 Final Response letter referred Plaintiffs to OpenFEMA and otherwise denies the allegations in this paragraph.

33. The Parish affirmed in its appeal of FEMA's Final Response on February 27, 2023 that it did not seek proprietary data but rather any input and output data crucial to St. Charles Parish residents that will assist the Parish in understanding the risk rating to protect and advance the interest of its citizens.[33]

**Defendant's Response**: Defendant admits that Parish's appeal letter stated that it did not seek proprietary data but rather any input and output data crucial to St. Charles Parish residents that will assist the Parish in understanding the risk rating to protect and advance the interest of its citizens, and it respectfully refers the Court to the letter for a full and accurate statement of its contents.

---

[31] R. Doc. 31-2 ¶ 20.
[32] *See* Jewell Ex. 2.
[33] Jewell Decl. ¶ 27 and Ex. 3.

34.     Upon receipt of the Parish's appeal, FEMA commenced its "second" search on March 8, 2023.[34]

**Defendant's Response**:  Admitted.

35.     FEMA complains that the Parish's appeal was "vague as to the specific data" requested, so it unilaterally determined only the Milliman data used to create Risk Rating 2.0 methodology "to be the potential focus of Plaintiffs' request."[35]

**Defendant's Response**:  Defendant admits that at the time it initially considered Plaintiff's appeal, it believed Plaintiff's appeal was "vague as to the specific data" requested, and it respectfully refers the Court to paragraph 26 of the Hines Declaration for a full and accurate statement of its view. Defendant also admits that, at the time it initially considered Plaintiff's appeal, it took note of how Plaintiffs "referenced the Milliman data that was used to create the Risk Rating 2.0 rating methodology and determined that data to be the potential focus of Plaintiffs' request," and it respectfully refers the Court to paragraph 26 of the Hines Declaration for a full and accurate statement of its views. Defendant otherwise denies the characterization of its determination as "unilateral[]," and it respectfully refers the court to paragraphs 14–15, 23, 26–29 for a full and accurate statement of Defendant's efforts to understand Plaintiffs' own characterization of their FOIA request.

36.     In conducting the "second" search, FEMA decided that responsive records included non-publicly-available "Milliman data (and subsumed data from the other catastrophe modeling vendors) underlying Risk Rating 2.0."[36]

**Defendant's Response**:  Defendant admits and respectfully refers the Court to paragraphs 26–33 of the Hines Declaration for a full and accurate statement of its determination.

37.     FEMA decided that "all the Milliman data potentially responsive to Plaintiffs' request" was contained in records "previously collected but had not yet [been] released for a prior FOIA request from a separate requester," a request numbered 2022-FEFO-00776.[37]

**Defendant's Response**:  Defendant admits and respectfully refers the Court to paragraphs 26–33 of the Hines Declaration for a full and accurate statement of its determination.

---

[34] R. Doc. 31-2 ¶ 25.
[35] *Id.* ¶ 26.
[36] *Id.* ¶ 29.
[37] R. Doc. 31-2 ¶ 29.

10

38. Request 2022-FEFO-00776 sought "[a]ll actuarial communications, reports, spreadsheets, data files, and other records provided to FEMA by Milliman, Inc. in connection with Milliman's work under Risk Rating 2.0."[38]

**Defendant's Response**: Defendant admits and respectfully refers the Court to the quoted paragraph the Hines Declaration for a full and accurate statement of its contents.

39. FEMA searched these 2022-FEFO-00776 materials between March 24, 2023 and April 3, 2023 and determined this database had all of the records potentially responsive to Plaintiffs' request.[39]

**Defendant's Response**: Defendant admits and respectfully refers the Court to paragraphs 26–33 of the Hines Declaration for a full and accurate statement of its determination.

40. FEMA further determined that "the records in the repository of Milliman documents . . . accompanied by publicly-available exhibits on FEMA's website, provide all that is necessary to calculate a Risk Rating 2.0 premium for a specific building in St. Charles Parish or any other location."[40]

**Defendant's Response**: Defendant admits and respectfully refers the Court to paragraphs 26–33 of the Hines Declaration for a full and accurate statement of its determination.

41. FEMA points to and describes this "publicly available information" to the Parish for the first time in the Hines Declaration.[41]

**Defendant's Response**: Admitted.

42. FEMA completed its work on the search for records on April 3, 2023, and "anticipated issuing a response to Plaintiffs and beginning to provide responsive material soon after

---

[38] *Id.* ¶ 30.
[39] *Id.* ¶ 32.
[40] *Id.* ¶ 33.
[41] *See* Jewell Decl. ¶ 31.

11

April 19, once it had publicly released the full risk-rate data on its website and could also direct the requester to these public materials."[42]

**Defendant's Response**: Defendant admits and respectfully refers the Court to the quoted paragraph of the Hines Declaration for a full and accurate statement of its contents.

43.     FEMA did not tell the Parish when the referenced "publicly-available" material in fact became publicly available or was published on FEMA's website.[43]

**Defendant's Response**: Admitted.

44.     Because FEMA did not communicate this information to the Parish, the Parish's only remedy was to expend more public resources to file this suit on April 25, 2023 after exhausting its administrative remedies.[44]

**Defendant's Response**: Defendant denies this statement for lack of knowledge or information sufficient information to form a belief about the truth of the statement.

45.     FEMA ultimately produced 13,065 pages of records, the vast majority of which were not redacted or considered confidential.[45]

**Defendant's Response**: Defendant admits that it produced 13,065 pages and that many of the pages were not redacted. Otherwise, this paragraph calls for a legal conclusion, to which no response is required.

46.     To assist with the review of the document production, the Parish retained a renowned expert, Dr. Joseph Suhayda who has over 30 years of experience in coastal physical process, coastal engineering, marine geotechnics, hurricane flooding, and oceanographic design criteria.[46]

**Defendant's Response**: Defendant denies that Dr. Joseph Suhayda is an expert for purposes of this case.

---

[42] R. Doc. 31-2 ¶ 38.
[43] Jewell Decl. ¶ 31.
[44] *See id.* ¶ 32.
[45] R. Doc. 31-2 ¶ 40.
[46] Exhibit H, Declaration of Joseph Suhayda ("Suhayda Decl.") ¶ 3.

47. Dr. Suhayda was retained to assist the Parish in analyzing FEMA's production, provide advice on documents that should have been produced, and to assist in understanding how the Parish can make critical policy decisions and adequately inform its citizens based on the data and information FEMA ultimately provides to the Parish.[47]

**Defendant's Response**: This paragraph does not state material facts, and Defendant therefore is not required to respond. To the extent a response is deemed required, Defendant denies this statement for lack of knowledge or information sufficient information to form a belief about the truth of the statement.

48. The records produced by FEMA primarily address insurance variables and property characteristics that are countrywide in scope and not specific to St. Charles Parish – as requested.[48]

**Defendant's Response**: Defendant denies except to admit, as explained in paragraph 32 of the Hines Declaration, that "the data sought—the 'risk model used to assign premiums to St. Charles Parish'—does not exist at the parish level. The risk data outputs of the catastrophe models are produced at the location level and aggregated to the state and line-of-business level in the 'Target Rate Level' exhibit produced to Plaintiffs . . . .Target rate levels, *i.e.*, target NFIP premiums, are set at the state and occupancy level, rather than at the parish level. FEMA does not aggregate to parish or county levels when developing its rating algorithm." Defendant further notes that, as explained in paragraph 33 of the Hines Declaration, Plaintiffs now have all that is necessary to calculate a Risk Rating 2.0 premium for a specific building in St. Charles Parish or any other location.

49. FEMA's production contains very limited amount of data specific to even Louisiana, and there was no data in the production that provided specific information concerning calculating insurance premiums in St. Charles Parish.[49]

**Defendant's Response**: Defendant denies except to admit, as explained in paragraph 32 of the Hines Declaration, "the data sought—the 'risk model used to assign premiums to St. Charles Parish'—does not exist at the parish level. The risk data outputs of the catastrophe models are produced at the location level and aggregated to the state and line-of-business level in the 'Target Rate Level' exhibit produced to Plaintiffs . . . .Target rate levels, *i.e.*, target NFIP premiums, are set at the state and occupancy level, rather than at the parish level. FEMA does not aggregate to parish or county levels when developing its rating algorithm." Defendant further notes that, as explained in paragraph 33 of the Hines Declaration, Plaintiffs now have all that is necessary to calculate a Risk Rating 2.0 premium for a specific building in St. Charles Parish or any other location.

---

[47] Suhayda Decl. ¶ 4.
[48] Suhayda Decl. ¶ 7 and Ex. 1.
[49] Suhayda Decl. ¶ 8.

50. Dr. Suhayda has reviewed FEMA's production, numerous public FEMA documents and reports related to Risk Rating 2.0, and determined that FEMA has in its possession data and information that would be highly valuable to the elected officials in St. Charles Parish, as it was originally requested.[50] For example, the key Risk Rating 2.0 Methodology Report explains the data used by FEMA and Milliman in creating Risk Rating 2.0.[51]

**Defendant's Response**: Defendant denies the statement regarding Dr. Suhayda's review for lack of knowledge or information sufficient information to form a belief about its truth. Defendant denies that it has in its possession data and information responsive to Plaintiffs' request. Defendant denies the statement regarding what would be valuable to elected officials for lack of knowledge or information sufficient information to form a belief about its truth. Defendant admits that its *Risk Rating 2.0 Methodology and Data Sources* report explains that data used to create Risk Rating 2.0, and it respectfully refers the Court to the report for a full and accurate statement of its contents.

51. Based on Dr. Suhayda's review of the documents FEMA has produced and/or that are publicly available for review, the following list is a non-exhaustive sampling of documents that are now known to exist and are responsive to the Parish's request and have not been produced or have been broadly identified as exempt:

a. Premium Calculation Worksheet Input Data for each individual property in St. Charles Parish;

b. Premium Calculation Worksheet Output Data for each individual property in St. Charles Parish;

c. Historic Flood Claims Data specific to the Parish;

d. The map of Risk Rating 2.0 Premium Estimates for the Parish, which was previously available on the FEMA READYYOURRISK.COM website;

e. Redacted copies of all technical reports and communications by any consultants who completed any modeling to either FEMA or Milliman that included FEMA inputs or was selected by FEMA as part of the Risk Rating 2.0 premium calculation, including, but not limited to: i. Atkins; ii. Mapping Data Integration Model Documentation Version 2.0 (February 13, 2020); iii. KatRisk

---

[50] *Id.* ¶¶ 5-6.
[51] *Id.* ¶ 6; *see* Methodology Report; *See* R. Doc. 31-2 ¶ 30 (citing same).

Data and Technical Documentation (February 2018); iv. AIR Inland Flood Model for the United States (June 2016); v. AIR Hurricane Model for the United States (June 2017); vi. RQE v. 18.0 US Flood Model Principles and Methodology (July 2018); and

f. Any documentation confirming the list of levees in the Parish considered as part of the Risk Rating 2.0 and reasons for exclusion of any levees.[52]

**Defendant's Response**: Denied for the reasons explained at paragraphs 12–18 of the Supplemental Declaration of Naomi Ondrich, filed today alongside this response to Plaintiffs' Statement of Uncontested Facts.

Dated: August 5, 2024              Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Yoseph T. Desta*
YOSEPH T. DESTA (CA Bar No. 332179)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Phone: 202-305-3080
Email: Yoseph.T.Desta@usdoj.gov

*Counsel for Defendant*

---

[52] Suhayda Decl. ¶ 9.