UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ST. CHARLES PARISH, LOUISIANA AND MATTHEW JEWELL, IN HIS OFFICIAL CAPACITY AS PARISH PRESIDENT<br>    *Plaintiffs*,<br><br>v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY<br>    *Defendant*. | CIVIL ACTION: 23-cv-1369<br><br><br>JUDGE DARREL JAMES PAPILLION<br><br><br>MAGISTRATE JUDGE MICHAEL B. NORTH |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, St. Charles Parish and Parish President Matthew Jewell (collectively, the "Parish") submit this Reply Memorandum in Support of their Cross-Motion for Summary Judgment to respond to the points raised by FEMA in its opposition memorandum (R. Doc. 39). FEMA's motion for summary judgment should be denied, the Parish's cross-motion should be granted, and the Parish's request should be remanded to FEMA because FEMA's own briefing and declarations reveal that it violated FOIA.

**A. FEMA improperly narrowed the Parish's FOIA request.**

FEMA's entire argument boils down to this: FEMA's search was adequate because St. Charles Parish only requested Milliman modeling data. But the Parish did not only request Milliman modeling data. So, the ultimate issue for the Court to decide is whether FEMA reasonably interpreted the Parish's FOIA request as seeking only Milliman's modeling data when developing Risk Rating 2.0. If the Court finds that FEMA has not reasonably interpreted the Parish's request because, in fact, the Parish did not limit its request to only Milliman data,

1

then the Court must deny FEMA's motion for summary judgment. This is because FEMA admits that it did not search for any documents beyond Milliman data, and it does not deny that documents otherwise responsive to the Parish's request (and not searched or produced) exist. Accordingly, its search was inadequate.

FOIA was enacted to promote transparency, and as a result, "the FOIA requires federal agencies to release all records responsive to a request for production." *Mobley v. C.I.A.*, 924 F. Supp. 2d 24, 33 (D.D.C. 2013) (citing 5 U.S.C. § 552(a)(3)(A)). The requester need only reasonably describe the records it seeks, and the agency analyzing the request has the duty to construe the FOIA request liberally. *Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). "[T]he agency must be careful not to read the request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester. To conclude otherwise would frustrate the central purpose of the Act." *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985).

The evidence—the original communications between the parties—shows that the Parish did not limit its FOIA request to Milliman data. On November 3, 2022, the Parish requested of FEMA: "Please provide all data including but not limited to modeling data used to calculate NFIP flood insurance premiums in St. Charles Parish, Louisiana, in Risk Rating 2.0."[1] Twenty days later, FEMA asked for clarity. President Jewell responded: "The NFIP uses risk modeling to determine how much premium to charge participants who participate in the flood insurance program. I am requesting the risk model used to assign premiums to St. Charles Parish residents. I believe Milliman was the company that did the modeling for FEMA."[2] The plain language of the request and President Jewell's attempt to clarify and assist in no way narrowed the request to

---

[1] R. Doc. 35-5, at 7.
[2] R. Doc. 35-5, at 6.

**only** Milliman data. This was clear in the Parish's February 27, 2023 Appeal Letter[3] following FEMA's Final Response and blanket denial and invocation of Exemption (b)(4).[4] The Parish again explained that it sought "**all data, including but not limited to modeling data**, that was used to calculate the NFIP."[5] In direct response to FEMA's application of the exemption, the Parish further explained, "The FOIA request, though, did not seek third party proprietary data or any type of algorithm that FEMA used to calculate the NFIP premiums in Risk Rating 2.0. Rather, the request seeks the data that is crucial to the residents of St. Charles Parish and will assist in understanding the risk rating in order to intelligently protect and advance the interest of its citizens."[6] The focus of the request is clearly on St. Charles Parish data, not Milliman modeling data.

    Following the appeal, the Parish received another follow-up from FEMA. Stephanie Tucker of FEMA stated that she had been charged with processing the appeal, and she understood that the Parish "is seeking '…all data including but not limited to modeling data used to calculate NFIP flood insurance premiums in St. Charles Parish, Louisiana, in Risk Rating 2.0."[7] She stated that "**from this request**, I am initiating a second search for responsive records . . . ."[8] Ms. Tucker then asked for "specific examples of records that would fall under 'all data' described in the request."[9] Ms. Tucker's email does not mention Milliman and does not indicate that FEMA understood the request to be limited to Milliman data; had FEMA stated as much, the Parish would have clarified that its request was not limited to Milliman data. In response, the Parish restated its prior communications with FEMA—that the Parish was seeking "the risk

---

[3] R. Doc. 35-5, at 12-15.
[4] R. Doc. 35-5, at 9-11.
[5] R. Doc. 35-5, at 13 (emphasis in original).
[6] *Id*.
[7] R. Doc. 35-5, at 16.
[8] *Id*. (emphasis added).
[9] *Id*.

3

model used to assign data to assign premiums to St. Charles Parish residents."[10] Again, while President Jewell noted that Milliman was the company that did the modeling, the request was not only for Milliman's data. The Parish made clear that it sought and believed it was entitled to "any data or information **considered by FEMA in establishing the 'Risk Rating 2.0'** and/or flood insurance premiums."[11] Thus, FEMA's arguments that the Parish did not seek FEMA input data until now is untrue. FEMA did not seek any further clarity, and the next response from FEMA stated that a second search had been conducted and the Disclosure Branch was awaiting the transfer of records.[12]

FEMA ignored the Parish's original request, its requested clarification, and two multi-page letters to FEMA explaining its request for **all data** used by FEMA to establish the Risk Rating 2.0 or NFIP premiums in St. Charles Parish. None of those communications can be reasonably interpreted as a limited request for only Milliman data, and FEMA's narrowing of the request violates the FOIA standard. FEMA cannot interpret the request so strictly as to avoid providing data that it knows exists. With this conclusion—that the Parish requested more than Milliman data—the remainder of FEMA's arguments in its opposition memorandum regarding the adequacy of its search fail. If the Parish requested data beyond only Milliman data, which it did, then FEMA's decision to search for responsive records in only a "previously compiled central repository of Milliman data" was not reasonable or adequate.[13]

---

[10] R. Doc. 35-5, at 17.
[11] *Id.* (emphasis added).
[12] R. Doc. 35-5, at 19.
[13] *See* R. Doc. 39, at 12. FEMA complains that that the Parish's arguments regarding the adequacy of FEMA's first search is irrelevant because it "cured any defect" with regard to its interpretation of the initial request by ultimately "broadening" its search and producing over 13,000 records. But those documents were not responsive, and moreover it demonstrates a pattern of, at best, laziness, and, at worst, a complete disregard for its obligations under FOIA. Instead of conducting a fair search for the requested records and being transparent with the Parish, a local governing body, it has chosen to fight and defend its unreasonable interpretation of the request.

**B. The requested documents exist, and the Parish is entitled to them.**

It may be true that once "all requested records are surrendered, federal courts have no further statutory function to perform."[14] But, as the Parish has demonstrated, all requested records have not been surrendered. FEMA cannot genuinely make this argument after admitting that it only searched for Milliman data. At best, FEMA does not know whether the requested records exist or not. But the requested records—the data that FEMA used to calculate the NFIP premiums under Risk Rating 2.0 for St. Charles Parish—do exist. How else could FEMA have calculated the premiums in St. Charles Parish? What did it review to determine a fair premium? The Parish stressed in its motion that FEMA has not produced levee data, loss data, or claims information relevant to St. Charles Parish, all of which are categories of data FEMA published that it considered in Risk Rating 2.0. FEMA does not dispute this or assert FEMA does not possess it, but instead argues that it did not have to produce it because those categories "are not Milliman risk-modeling data."[15] As for the additional categories of documents that Dr. Suhayda explains should be available to calculate premiums in the Parish, FEMA's response is to either attack Dr. Suhayda's expertise (addressed below) or again assert that the Parish's argument is "irrelevant" because its request only sought Milliman risk modeling data.[16] Incredibly, FEMA's position is that the documents and data that they admit exist and form, at least in part, the basis for setting flood insurance premiums in St. Charles Parish are not relevant to the Parish or President Jewell.

Notably, FEMA expressly acknowledges that the following records exist: Historic Flood Claims Data specific to the Parish and redacted copies of technical reports and communications

---

[14] R. Doc. 31-1, at 5 (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).
[15] R. Doc. 39, at 14.
[16] R. Doc. 39, at 19-22.

by consultants who completed modeling. Putting aside the tireless argument that the documents are not responsive Milliman materials, FEMA cannot reasonably take the position that Historic Flood Claims Data specific to St. Charles Parish is not relevant or responsive to the Parish's request for the data FEMA used to calculate flood insurance premiums in St. Charles Parish under Risk Rating 2.0. Curiously, FEMA states that there is no premium calculation worksheet input or output data for individual properties in the Parish.[17] But FEMA's online sample worksheets, which FEMA referred the Parish to in November 2023, indicate that these worksheets are the very vehicle that track the data underlying premiums assigned to each property covered in NFIP.[18] Moreover, FEMA explains on its website that it calculated flood insurance premiums by looking at a variety of factors, including "the amount and type of coverage being purchased, location and flood zone, and **the design and age of your structure**."[19] If that is the case, how can FEMA not possess input or output data for individual properties or any properties in St. Charles Parish? How else did it come up with the premiums?

FEMA does not address its own historical loss data, which FEMA's Methodology Report identified,[20] or the other documents discussed in the Methodology Report, such as Milliman's actuarial communications to FEMA. If FEMA maintains that these documents are confidential or proprietary, and thus exempted, as it does the technical reports and communications, FEMA should have listed all of these documents on the *Vaughn* index. FEMA's *Vaughn* index, however, only lists contracts and other information completely irrelevant to the Parish's request.[21]

---

[17] R. Doc. 39, at 21.
[18] *See* **Exhibit 1**, FEMA's November 16, 2023 correspondence to the Parish re: *St. Charles Parish at al. v. FEMA*, at 3 n.11.
[19] https://www.fema.gov/faq/calculation-flood-insurance (emphasis added).
[20] *See* R. Doc. 35-3, at 4.
[21] FEMA is wrong to assert that the Parish waived any argument on the application of Exemptions 4 and 5. The exemptions applied so far pertain to documents that the Parish did not request, which the Parish addressed in its

Ultimately, FEMA has shown that records responsive to the Parish's FOIA request exist, FEMA did not conduct a search for them, and the Parish is entitled to them. FEMA cannot withhold the documents on the grounds that the data exists in a different form than that requested or described by the Parish. For that reason, this matter should be remanded to FEMA to conduct additional searches for the requested records.

### C. Dr. Suhayda's Declaration is proper and meets the federal standard.

The Parish retained Dr. Suhayda because of his extensive experience working with the Parish and other government agencies in connection with the implementation of prior flood insurance programs and premiums. His expertise was necessary to counsel Parish leaders on how to interpret Risk Rating 2.0 and understand what additional information was necessary to properly assess the increased premiums in St. Charles Parish. Dr. Suhayda's experience is evidenced in his curriculum vitae.[22] He has extensive experience performing research and studying flood modeling, and in fact developed a model regarding Louisiana's coastal zone in 1984, which was used by FEMA for Louisiana.[23] Certainly, he is qualified by his knowledge, skill, experience, training and education to review the documents produced by FEMA and consult on whether other documents regarding data necessary to set flood premiums exist.

It is worth noting that throughout this entire litigation, FEMA has sought to avoid any discovery whatsoever. The Parish served discovery requests on FEMA, which FEMA refused to respond to until the Court ordered FEMA to respond to requests relevant to its search procedures.[24] FEMA could have, in turn, requested discovery from the Parish, including any

---

brief. *See* R. Doc. 35-1, at 27. FEMA did not include any responsive materials or data used to calculate premiums in St. Charles Parish in its *Vaughn* index, including any historical loss data, historical flood data, or technical reports and communications, which FEMA possesses.
[22] **Exhibit 2**, Curriculum Vitae of Dr. Joseph Suhayda.
[23] *Id.* (*see* Research Contracts 10, 21, 22, 29, 35, 38, 55, 56, 57, 58, 59, 60, 61, 62, and 63).
[24] *See* R. Docs. 12 and 21.

information on experts. On February 5, 2024, the Parish informed FEMA that it intended to have an expert review the materials produced by FEMA and asked for expert deadlines to be extended in accordance with FEMA's expected production deadline. FEMA stated in response that it did not believe expert reports to be appropriate, but it did not object to the use of experts, and it cannot feign surprise that the Parish had an expert consult and review the records.

The Parish also retained Dr. Suhayda to aid the Court. Dr. Suhayda is intimately familiar, based on his professional experience, with the documents that are created either by FEMA or in connection with the process – i.e., the data created and reviewed – when determining flood insurance premiums. And his expertise has proven helpful and correct. Dr. Suhayda reviewed FEMA's production, consulted the Parish on what he expected to be produced, and FEMA has admitted that it possesses documents that he identified.

While Dr. Suhayda's declaration and expertise is helpful to all parties in this litigation, it is not necessary to the ultimate determination here—whether FEMA improperly narrowed the Parish's request and has failed to conduct an adequate search for the requested documents. As discussed herein and in the Parish's prior briefing, FEMA has violated FOIA on that issue.

**D.  The Court can determine the Parish's eligibility for attorney's fees and costs.**

The Parish is entitled to attorney's fees and costs as a matter of law pursuant to 5 U.S.C. § 552. As the Parish explained in detail its motion, with supporting caselaw, it is both eligible and entitled to fees, which the Court can assess based on the undisputed facts of this case with the forthcoming order on the parties' cross-motions for summary judgment, which will presumably conclude the litigation. FEMA's classification of the Parish's request as a request for "interim" fees is therefore misplaced. Following the Court's order on the motions, the parties can litigate the amount of fees FEMA owes to the Parish in a separate motion.

**CONCLUSION**

Considering the foregoing and the arguments and evidence put forth by the Parish in its cross-motion for summary judgment (R. Doc. 35), the Court should deny FEMA's motion for summary judgment, grant the Parish's cross-motion, remand this matter to FEMA ordering it to conduct an adequate search for the requested records, and find that the Parish is entitled to statutory attorney's fees and costs.

Respectfully submitted,

**ADAMS AND REESE LLP**

*/s/ Erica P. Sensenbrenner*
CHRISTOPHER J. KANE (#29282)
ERICA P. SENSENBRENNER (#38400)
701 Poydras Street, Suite 4500
New Orleans, LA 70l39
Telephone: (504) 58l-3234
Facsimile: (504) 566-0210
Christopher.Kane@arlaw.com
Erica.Sensenbrenner@arlaw.com

COREY M. OUBRE (#28709)
Director of Legal Services
St. Charles Parish
723 Paul Maillard Road
Luling, LA 70070
Telephone: (985) 783-5013
Facsimile: (985) 307-0861
cmoubre@stcharlesgov.net

ROBERT L. RAYMOND (#11408)
Assistant Director of Legal Services
St. Charles Parish
14108 River Road
Destrehan, LA 70047
Telephone: (985) 783-5013
Facsimile: (985) 307-0861
rraymond@stcharlesgov.net

***Attorneys for Plaintiffs***