

U.S. Department of Justice

Civil Division
*Washington, DC*

EXHIBIT 1

JCS:YDesta
233279-2979

Telephone:
(202) 305-3080

**ELECTRONICALLY DELIEVERED ON NOVEMBER 16, 2023**

Christopher J. Kane,
Adams and Reese LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139

    Re:    Plaintiffs' November 2, 2023, correspondence in
                <u>St. Charles Parish et al., v. FEMA</u>, No. 2:23-cv-01369 (E.D. La.)

Dear Mr. Kane:

      Thank you for your November 2, 2023, letter regarding FEMA's timeline for producing the 12,904 pages of records responsive to your FOIA request for Risk Rating 2.0 data used to calculate National Flood Insurance Program premiums in St. Charles Parish, Louisiana.

      As FEMA previously has identified, FEMA is processing the responsive records and producing non-exempt information in rolling productions on a monthly basis. ECF No. 18-3 ¶¶ 3–4. FEMA issued its first interim response on September 29, 2023, releasing 524 pages of responsive records in their entirety. FEMA issued its second interim response on November 2, 2023, releasing 416 pages of responsive records in their entirety. FEMA anticipates that its third interim response will issue at the beginning of December.

      FEMA is currently processing the 12,904 pages of responsive records at its standard rate of 500 pages a month. FEMA generally uses this standard processing rate across matters to equitably allocate its limited FOIA resources across its large workload of FOIA cases and requests.[1] Many other agencies are similarly situated. For this reason, courts routinely permit agencies to use a 500-page-per-month processing rate.[2] And parties often agree to a 500-page-

---

[1] FEMA's Disclosure Branch, which processes FOIA requests, is currently responding to 734 open requests, including over 500 overdue requests. On average, the Disclosure Branch receives 20-40 new requests each week. In addition, the Disclosure Branch is handling five appeals, as well as court-ordered productions for two lawsuits. To handle this workload, the Disclosure Branch has 11 federal employees. Seven employees are paid through disaster funding and can only perform minimal work not related to disasters. None of the records responsive to Plaintiffs' complaint are specific to a disaster. The remaining four employees are authorized to respond to requests that are not specific to a declared disaster. At this time, FEMA is unable to increase staffing due to the continuing resolution.

[2] *See, e.g.*, *Nat'l Sec. Couns. v. U.S. Dep't of Just.*, 848 F.3d 467, 471–72 (D.C. Cir. 2017) (in context of challenge to FOIA processing fees, stating policy of processing 500 pages per month "ultimately provides more pages to

per-month rate.³ At this standard rate, FEMA anticipates completing its production of records by the beginning of November 2025. That timeline is reasonable given the thousands of pages FEMA is processing for production and the careful review of each page of complex risk modeling data that FEMA is undertaking to ensure that proprietary information—exempted from disclosure under FOIA—is redacted. It is common for FOIA matters under such circumstances to take several years, as courts often recognize.⁴ Such timelines are completely consistent with FOIA, which does not set production timelines and contemplates that agencies may need significant processing time before completing productions.⁵ Therefore, contrary to Plaintiffs' characterization, FEMA's ongoing processing and production of the outstanding responsive pages and the length of this litigation do not represent any sort of impermissible "continued delays" on FEMA's part.⁶

---

more requesters," "avoid[s] situations in which a few, large queue requests monopolize finite processing resources," and "serves to promote efficient responses to a larger number of requesters"); *Negley v. U.S. Dep't of Just.*, 305 F. Supp. 3d 36, 46 (D.D.C. 2018) (similar), *aff'd sub nom. Negley v. United States Dep't of Just.*, No. 18-5133, 2018 WL 4148608 (D.C. Cir. Aug. 14, 2018); *Middle E. F. v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 185–87 & n.3 (D.D.C. 2018) (approving agency's 500-pages-per-month processing rate over plaintiff's urging that a doubled rate was necessary to avoid production delays; noting that, "[i]n a number of recent cases in this District, a production rate of 500 pages per month has been approved"; and collecting cases); *Daily Caller News Found. v. FBI*, 387 F. Supp. 3d 112, 121 (D.D.C. 2019) (similar); *White v. Exec. Off. of US Att'ys*, 444 F. Supp. 3d 930, 943–44 (S.D. Ill. 2020) (similar), *aff'd sub nom. White v. Fed. Bureau of Investigation*, 851 F. App'x 624 (7th Cir. 2021); *Colbert v. FBI*, 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (approving agency's standard processing rate of 500 pages per month over plaintiff's objection that such a rate would delay productions, noting that "courts often give deference to the agency's release policies"); *see also, e.g.*, *Republican Nat'l Comm. v. U.S. Dep't of State*, 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016) (500 pages per month); *Color of Change v. U.S. Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 451 (S.D.N.Y. 2018) (500 pages per month); *cf. Am. Ctr. for Law & Just. v. U.S. Dep't of State*, Case No. 16-cv-2516 (D.D.C.), Minute Ord. of June 27, 2017 (400 pages per month); *Judicial Watch, Inc. v. U.S. Dep't of State*, Case No. 17-cv-205 (D.D.C.), Minute Ord. of June 30, 2017 (300 pages every four weeks); *Citizens United v. U.S. Dep't of State*, Case No. 16-cv-67 (D.D.C.), ECF No. 17 at 3 (declining "to adopt Plaintiff's proposed production order of 2000 pages per month" and instead holding State "to its 300-page commitment").

³ *See, e.g., Citizens United v. U.S. Dep't of State*, Case No. 15-cv-1720 (D.D.C.), Minute Ord. of June 28, 2016 (adopting rate of 500 pages ever four weeks from ECF No. 11 ¶ 10); *Am. First Policy Inst. v. U.S. Dep't of Health and Hum. Servs.*, Case No. 4:23-cv-369 (N.D. Tex.), ECF No. 15 (scheduling order adopting 500-page-per-month rate proposed by the parties in ECF No. 14).

⁴ *Center for Immigr. Studies v. U.S. Citizenship & Immigr. Servs.*, 628 F. Supp. 3d 266, 273 (D.D.C. 2022) (observing that "[a]gencies often take multiple years to produce responsive records" and "[s]ometimes, they take decades"); *Negley*, 305 F. Supp. 3d at 46 (permitting 500 page-per-month processing rate even though that rate would mean that the agency would take more than 80 years to produce all the records at issue); *Freedom Watch v. Bureau of Land Mgmt.*, 325 F. Supp. 3d 139, 142 (D.D.C. 2018) (upholding 500-page-per-month rate despite the fact that processing of plaintiff's FOIA request at that rate would take approximately 500 months); *White*, 444 F. Supp. 3d at 942 (similar, in case involving nine year processing and production time); *cf. Cole v. Rochford*, 285 F. Supp. 3d 73, 75 (D.D.C. 2018) (denying discovery into agency's search efforts even though agency took five years); *Physicians Comm. for Responsible Med. v. United States Dep't of Agric.*, 316 F. Supp. 3d 1, 3 (D.D.C. 2018) (as discussed in background, 3.5-year review and processing time).

⁵ *See, e.g., Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 189–90 & n.8 (D.C. Cir. 2013).

⁶ Nov. 2, 2023, Letter at p. 1. FEMA reserves the right to challenge Plaintiffs' "eligib[ility] and entitle[ment] to fees and costs." *Id.*

Thus far, Plaintiffs have not identified any basis for FEMA to burden its already limited agency FOIA resources by deviating from its standard processing rate in this case.

To begin with, Plaintiffs did not seek expedited processing from the agency for their FOIA request. Nor would they have had any basis to do so. Agencies must grant requesters expedited processing only when they demonstrate a "compelling need" for the requested information: when (1) "a failure to obtain requested records on an expedited basis … could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or (2) if the request was "made by a person primarily engaged in disseminating information" and there is "urgency to inform the public concerning actual or alleged Federal Government activity."[7] The catastrophe modeling data underlying insurance premiums cannot reasonably be expected to concern a threat to life or safety; and Plaintiffs are not persons primarily engaged in disseminating information and have not identified any urgent need to inform the public about technical modeling data.

Further undercutting any urgency: FEMA publicly released a bevy of information about Risk Rating 2.0 rate calculations and the underlying catastrophe modeling well before Plaintiffs' FOIA request and suit for such information.[8] In April 2021, FEMA posted on its website a 64-page technical document entitled "Risk Rating 2.0 Methodology and Data Sources.[9] This comprehensive report provided a description "of the methodology and data sources used to develop Risk Rating 2.0," such as "GIS data, Market Basket data, NFIP in-force exposure, NFIP loss and exposure data, and catastrophe model output"; and the report included algorithms, rates, rating factors, and illustrative examples of rate calculation and actuarial soundness under Risk Rating 2.0.[10] Alongside the report, FEMA also released (1) premium calculation worksheet examples, i.e., four sample worksheets explaining various inputs that led to premium rates using Risk Rating 2.0[11]; and (2) an "Appendix D Rating Factors" spreadsheet providing numerical rating values for structural relative elevation, drainage area, distance to coasts, oceans, lakes, and more to help the public understand how premiums would be calculated under Risk Rating 2.0.[12]

Even though Plaintiffs have not identified any basis for FOIA processing faster than FEMA's standard 500-page-per-month rate, FEMA nonetheless intends to increase its processing rate beginning in December 2023 to 1000 pages per month. Although increasing to 1000 pages per month will tax the agency's limited FOIA resources, FEMA has proactively decided on this course of action to demonstrate its good faith in resolving this FOIA case, forestall any production schedule disagreement, and avoid involving the Court unnecessarily in a case management issue that the parties can resolve amongst themselves. At the new processing rate, FEMA anticipates completing its production of records by the beginning of September 2024. Should Plaintiffs

---

[7] 5 U.S.C. § 552(a)(6)(E).

[8] *See* Declaration of Tony Hake, *Louisiana v. DHS*, No. 2:23-CV-01839 (E.D. La.) ECF No. 47-3.

[9] FEMA, *National Flood Insurance Program: Risk Rating 2.0 Methodology and Data Sources* (Apr. 16, 2021), https://www.fema.gov/sites/default/files/documents/fema_risk-rating-2.0-methodology-data-sources_4-21.pdf.

[10] *Id.* at 1.

[11] FEMA, *Risk Rating 2.0 Methodology and Data Sources - Premium Calculation Worksheet Examples*, https://www.fema.gov/sites/default/files/documents/fema_risk-rating_PCW_Rating_Examples.xlsx.

[12] FEMA, *Risk Rating 2.0 Methodology and Data Sources - Appendix D Rating Factors*, https://www.fema.gov/sites/default/files/documents/FEMA_Appendix-D-Rating-Factor-Tables_1-22.xlsx.

identify any basis for even more accelerated processing, FEMA is willing to consider increasing its processing rate to 1500 pages per month, which represents the maximum processing rate FEMA can achieve in this case without seriously impacting the agency's many other FOIA cases and requests.

      FEMA believes that this information resolves Plaintiffs' request that FEMA advise them regarding when they will receive the outstanding records responsive to their FOIA request.

      Best regards,

      */s/ Yoseph T. Desta*
      Yoseph T. Desta
      Trial Attorney
      U.S. Department of Justice